**MAY TRUCKING COMPANY,**
Plaintiff–Appellant,

v.

**OREGON DEPARTMENT
OF TRANSPORTATION,**
Defendant–Appellee.

No. 03–35381.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 14, 2004.

Filed Nov. 12, 2004.

Gordon T. Carey, Jr., Attorney, Portland, OR, for the appellant.

Jas. Jeffrey Adams, Assistant Attorney General, Salem, OR, for the appellee.

Before: GRABER, GOULD, and BERZON, Circuit Judges.

GRABER, Circuit Judge.

In this case of first impression, we hold that the Tax Injunction Act, 28 U.S.C. § 1341, applies to the International Fuel Tax Agreement (IFTA), a multi-jurisdictional taxation program in which one state collects taxes imposed by other states. We further hold that a taxpayer has a "plain, speedy and efficient remedy" within the meaning of the Tax Injunction Act so long as it may obtain a full and fair hearing in the courts of the state whose tax that taxpayer challenges. Accordingly, we affirm the decision of the district court, which held that the Tax Injunction Act deprives the court of subject matter jurisdiction to hear this claim that IFTA precludes Oregon's collection of certain fuel taxes.

## BACKGROUND

### A. *Oregon's participation in IFTA.*

The International Fuel Tax Agreement is a "multi-jurisdictional agreement that is intended to 'encourage cooperation in the administration and collection of motor fuel use tax.'" *Hi–Way Dispatch, Inc. v. Ind. Dep't of State Revenue,* 756 N.E.2d 587, 594 (Ind. T.C.2001) (quoting *Owner–Operator Indep. Drivers Ass'n v. State,* 725 N.E.2d 891, 892 (Ind.Ct.App.2000)). IFTA itself imposes no taxes. "Rather, its member jurisdictions impose the motor fuel

taxes, and IFTA permits the uniform administration and collection of those taxes as they pertain to multi-state carriers." *Id.* at 596–97. Under IFTA, an interstate motor carrier pays all its state fuel taxes quarterly to the "base jurisdiction" in which it registers as a licensee under IFTA.[1] The base jurisdiction then forwards the appropriate tax amounts to each individual state in which the motor carrier operates. That arrangement prevents a motor carrier from having to make multiple tax payments to the different states in which it operates. *Id.* at 594.

IFTA's provisions for obtaining a refund are somewhat more complicated. Pursuant to IFTA Article VIII, R830.300, a licensee "must submit claims for refund for tax paid on tax-exempt fuel directly to the respective jurisdiction." Thus, a licensee must file a request for a refund from each jurisdiction in which it paid taxes on tax-exempt fuel. At the same time, the base jurisdiction "shall allow credits and issue refunds for all of its licensees on behalf of all member jurisdictions" for "tax-paid fuel used outside the jurisdiction where the fuel was purchased." IFTA Art. XI, R1100. Thus, the proper procedure for obtaining a refund for fuel taxes depends in part on the type of refund claim at issue.

Federal law requires all states that have a fuel-tax reporting requirement to conform those requirements to IFTA. 49 U.S.C. § 31705. Thus, federal law mandates participation in IFTA for all states that impose a fuel tax. The provisions of IFTA itself, however, are *not* federal law. Rather, IFTA's Articles of Agreement and

Audit and Procedures Manuals are the product of the International Fuel Tax Association, a private organization made up of representatives chosen by the 48 continental states and the ten Canadian provinces that have entered into IFTA. IFTA Art. XV, R1500–10. IFTA's Articles of Agreement govern the administration and amendment of IFTA.

By statute, Oregon has authorized the Oregon Department of Transportation (ODOT) to "enter into an international fuel tax agreement with jurisdictions outside of this state to provide for cooperation and assistance among member jurisdictions in the administration and collection of taxes imposed on motor carriers for the consumption of all fuels used in vehicles operated interstate." Or.Rev.Stat. § 825.555(1) (2002). In turn, ODOT has promulgated regulations adopting the provisions contained in IFTA's Articles of Agreement and certain IFTA manuals, and ODOT has applied them to Oregon-based motor carriers. Or. Admin. R. 740–200–0040. Thus, IFTA has the force of law in Oregon, and Oregon-based motor carriers can use the state as their base jurisdiction under IFTA.

Unlike the other 47 states that participate in IFTA, however, Oregon does not itself impose a fuel tax on interstate motor carriers operating in the state. Instead, Oregon relies on a complicated weight/mile tax system. Or.Rev.Stat. § 825.474.[2] As the sole member jurisdiction in IFTA that receives no fuel taxes from other base jurisdictions, Oregon's participation in

---

1. The base jurisdiction is the member jurisdiction in which (1) "qualified motor vehicles are based for vehicle registration purposes," (2) the "operational control and operational records of the licensee's qualified motor vehicles are maintained or can be made available," and (3) where "some travel is accrued by qualified motor vehicles within the fleet."

IFTA Art. II, R212, *available at http://www.if-tach.org/index4.htm* (last visited Oct. 8, 2004).

2. Oregon does impose a fuel tax, collected by the vendor, on all fuel purchased in the state. Or.Rev.Stat. § 319.530. Motor carriers may credit against their liability under the weight/mile tax the fuel taxes that they have paid. Or.Rev.Stat. § 825.486.

IFTA does not generate revenue for the state.[3] Rather, Oregon participates in IFTA as a service to Oregon-based motor carriers operating outside the state. If Oregon did not participate in IFTA, an Oregon-based motor carrier would be forced either to select another base jurisdiction or to purchase a single-trip permit every time its trucks operated in another state.[4] Reliance on single-trip permits would place a substantial burden on Oregon-based motor carriers, placing them at a significant disadvantage relative to interstate motor carriers based in other jurisdictions.

### B. *Procedural background.*

#### 1. *The state administrative proceedings.*

Plaintiff May Trucking Company is an interstate motor carrier with its principal place of business in Brooks, Oregon. Plaintiff owns approximately 600 tractors and 1,200 trailers that operate throughout the continental United States. In 2000, ODOT mailed to Plaintiff a notice of assessment covering the period April 1, 1996, through December 31, 1998. The assessment determined that Plaintiff had underpaid fuel taxes and thus owed $491,891.14 in taxes calculated under IFTA. In a pair of administrative proceedings, Plaintiff disputed the assessment of taxes owed under IFTA.[5]

In addition to challenging ODOT's auditing procedures, Plaintiff argued that fuel consumed while idling was not taxable under IFTA. Plaintiff based that argument on IFTA Article VIII, R800, which states that "[t]he consumption of motor fuels used *in the propulsion* of qualified motor vehicles, except fuel consumed that is exempt from taxation by a jurisdiction, is the taxable event under this Agreement." (Emphasis added.)[6] Plaintiff argued that, because fuel consumed while idling does not actually propel the vehicle,"idling time" is not a "taxable event" within the meaning of IFTA. Plaintiff separately argued that "fuel consumed while idling is exempt under various member states' statutes and it is entitled to seek a refund based on those exemptions from Oregon, the base jurisdiction." Plaintiff thus sought a refund for all fuel consumed by its tractor-trailers while idling. In addition to mounting that specific challenge, Plaintiff also contested, under various state and federal laws, the validity of Oregon's adoption of IFTA.

In a proposed order filed on July 23, 2001, an administrative law judge (ALJ) concluded that ODOT's audit of Plaintiff's fuel records was unreasonable and that the "idling time" issue was not ripe for adjudication. The parties ultimately settled their dispute with respect to the auditing procedures and stipulated that the sole remaining issue in the administrative ap-

---

**3.** Oregon does receive an annual fee from each motor carrier that uses the state as its base jurisdiction. Oregon Revised Statute section 825.555(6) caps that fee at $650 per year.

**4.** *See* Oregon Department of Transportation, *Motor Carrier News,* Dec. 2001, at 1–2 (explaining the state's decision to enter into IFTA), *available at* http://www.oregon.gov/ODOT/MCT/docs/1201.pdf (last visited Oct. 9, 2004).

**5.** In the first administrative proceeding, ODOT Case No. 99044, Plaintiff sought a re-

fund of taxes owed during the period April 1, 1996, through December 31, 1996. In the second proceeding, ODOT Case No. 99706, Plaintiff sought a refund of 1999 IFTA-collected taxes.

**6.** Effective July 1, 2003, section R800 was amended to read: "The procedures contained in this agreement apply to motor fuel use taxes that are imposed by each jurisdiction on the consumption of motor fuel in qualified motor vehicles."

peal was the proper tax treatment of fuel consumed while idling. In a proposed order filed on March 28, 2002, the ALJ concluded that fuel consumed while idling is taxable under IFTA. The ALJ also held that Plaintiff, by stipulating that the remaining issue in the administrative appeal was the "idling issue," had waived its administrative-law and constitutional arguments.

The ALJ's conclusions with respect to assessed fuel taxes for the period between April 1996 and December 1998 were adopted in a final order issued on July 3, 2002. That order held that fuel consumed while idling was taxable under IFTA, noting that "[e]very appellate court that has considered the argument that Petitioner makes here has rejected it." The order also concluded that, to the extent that "idling time" fuel was tax-exempt under the statutes of various member jurisdictions, Plaintiff "must file its request directly with the respective jurisdictions as required by [IFTA Article VIII, R830.300]."

A separate final order reached the same conclusion with respect to Plaintiff's amended IFTA returns for 1999. Plaintiff timely appealed both rulings to the Oregon Court of Appeals, pursuant to Oregon Revised Statute section 183.482. On Plaintiff's motion, the two cases were consolidated.

## 2. *District court proceedings.*

While its consolidated case was pending before the Oregon Court of Appeals, Plaintiff filed the present action in the District Court of Oregon. In its amended federal complaint, which sought both declaratory relief and a refund, Plaintiff claimed that it was entitled to a refund for fuel consumed

while idling and that it had "no adequate or speedy remedy at law." In addition, Plaintiff argued that IFTA itself was "illegal, invalid, and unenforceable" under the United States Constitution, as well as improperly adopted, improperly implemented, and improperly delegated to administrative bodies by both the United States Congress and the Oregon legislature.

The State sought dismissal of the action on three bases, arguing that the district court lacked jurisdiction under the Tax Injunction Act (the Act), the Eleventh Amendment, and the *Younger*[7] abstention doctrine. The district court held that dismissal of the action was proper under both the Act and *Younger* abstention. The district court also concluded that the Eleventh Amendment barred Plaintiff's suit but that,"[i]f jurisdiction were not already precluded by the Tax Injunction Act, the court would allow plaintiff to amend its Complaint to name an individual defendant."[8] Accordingly, the court granted the State's motion and dismissed the action with prejudice.

Plaintiff timely appealed the district court's dismissal of the action with prejudice.

## STANDARD OF REVIEW

■■■ We review de novo a district court's dismissal of an action for lack of subject matter jurisdiction. *Hacienda Valley Mobile Estates v. City of Morgan Hill*, 353 F.3d 651, 654 (9th Cir.2003), *petition for cert. filed*, 72 U.S.L.W. 3769 (U.S. June 18, 2004) (No. 03–1681). Likewise, we review de novo a district court's interpretation of a federal statute. *SEC v. McCarthy*, 322 F.3d 650, 654 (9th Cir. 2003).

---

7. *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

8. Because we conclude that the Tax Injunction Act deprives the district court of subject matter jurisdiction, we need not and do not reach the district court's alternative grounds for dismissal.

## DISCUSSION

The Tax Injunction Act states simply that a district court "shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. Plaintiff makes three basic arguments regarding the applicability of the Act in this case. First, Plaintiff argues that the Act does not apply when a state collects taxes that it does not itself impose, particularly when that state does not provide a refund remedy for the taxes that it collects on behalf of other jurisdictions. Second, Plaintiff argues that it does not have a "plain, speedy and efficient remedy" because, under the State's interpretation of IFTA, Plaintiff is not entitled to a refund from its base jurisdiction for taxes on fuel consumed while idling and therefore must seek refunds from many state courts. Finally, Plaintiff argues that its request for declaratory relief and a refund in the district court does not "enjoin, suspend or restrain" state tax collection. We address each argument in turn, but find none persuasive.

### A. The Tax Injunction Act applies to taxes collected under IFTA.

#### 1. The purpose of the Act is implicated by multi-jurisdictional taxation programs.

■ Congress enacted the Tax Injunction Act to protect "the compelling needs of many States for a more prompt disposition of tax controversies." S. Rep. 75–1035, at 3 (1937). Congress also expressed some concern regarding the increased costs that states would bear if forced to defend the imposition of state taxes in federal, rather than state, courts. 81 Cong. Rec. 1416 (1937). As the Supreme Court recently explained,

the Act had two closely related, state-revenue-protective objectives: (1) to eliminate disparities between taxpayers who could seek injunctive relief in federal court—usually out-of-state corporations asserting diversity jurisdiction—and taxpayers with recourse only to state courts, which generally required taxpayers to pay first and litigate later; and (2) to stop taxpayers, with the aid of a federal injunction, from withholding large sums, thereby disrupting state government finances.

*Hibbs v. Winn*, —— U.S. ——, 124 S.Ct. 2276, 2287, 159 L.Ed.2d 172 (2004).

Plaintiff argues that those twin state-revenue-protective objectives are not implicated here because Oregon itself does not collect fuel taxes. Therefore, permitting a federal action will not result in a temporary delay or permanent loss of revenue to Oregon. However, that argument fails to consider the fact that permitting Plaintiff to challenge the collection of taxes under IFTA in federal court will disrupt revenue collection in every one of the 47 other states that rely on fuel taxes.

More importantly, Plaintiff's cramped construction runs counter to the Supreme Court's interpretation of the Act as a "'broad jurisdictional barrier.'" *Arkansas v. Farm Credit Servs. of Cent. Ark.*, 520 U.S. 821, 825, 117 S.Ct. 1776, 138 L.Ed.2d 34 (1997) (emphasis added) (quoting *Moe v. Confederated Salish & Kootenai Tribes of Flathead Reservation*, 425 U.S. 463, 470, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976)). The Act is "first and foremost a vehicle 'to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes.'" *Id.* at 826, 117 S.Ct. 1776 (quoting *California v. Grace Brethren Church*, 457 U.S. 393, 408–09, 102 S.Ct. 2498, 73 L.Ed.2d 93 (1982)).

In *Grace Brethren Church*, the Supreme Court held that the Act barred federal

subject matter jurisdiction over a challenge to a state unemployment tax imposed under "a cooperative federal-state scheme to provide benefits to unemployed workers." 457 U.S. at 396, 102 S.Ct. 2498. Although *Grace Brethren Church* gave little attention to the cooperative or multi-jurisdictional aspect of the case, we later relied on that decision to hold that the Act applies with equal force to "joint federal-state taxation" programs and " 'pure' state tax" programs. *Hawaiian Tel. Co. v. Haw. Dep't of Labor & Indust. Relations,* 691 F.2d 905, 910 (9th Cir.1982). In so doing, we rejected the plaintiff's argument that "the comity concerns underlying the State Tax Injunction Act are lessened when a state tax scheme contains a 'federal statutory ingredient.'" *Id.*

Although neither *Grace Brethren Church* nor *Hawaiian Telephone* conclusively resolves the issue of the Act's applicability to multi-jurisdictional taxation programs involving only states, those cases are instructive. If the comity-to-states concerns that animate the Act are sufficient to warrant its jurisdictional bar in cases involving joint federal-state taxation programs, it follows that those concerns suffice to warrant the Act's application to multi-state programs in which the federal government plays little part. The Act's application more properly turns on *whether* a state's revenue generation will be hindered by a federal court action, rather than on *which* state's revenue is at issue.

That focus is consistent with the Court's recent decision in *Hibbs,* which clarified that the Act bars actions in federal court that "seek to impede [a state's] *receipt* of tax revenues." 124 S.Ct. at 2281 (emphasis added). The Act did not apply to the action brought by the plaintiffs in that case because that action, if successful, " 'would result in the state's receiving more funds that could be used for the public benefit.' " *Id.* at 2283 (quoting *Winn v. Killian,* 307

F.3d 1011, 1017 (9th Cir.2002)). After *Hibbs,* the dispositive question in determining whether the Act's jurisdictional bar applies is whether "[f]ederal-court relief ... would have operated to reduce the flow of state tax revenue." *Id.* at 2288. When a challenge to a collection of state taxes would operate to interrupt or reduce the flow of several states' tax revenues, it appears even more likely that the Act precludes federal jurisdiction over that challenge than where the flow of taxes to only one state is at stake.

We further note that Congress itself, although belatedly and somewhat obliquely, has addressed this issue. In 49 U.S.C. § 31706, which addresses civil enforcement actions to ensure state compliance with IFTA, Congress expressly contemplated that such actions would be subject to the Act. In its entirety, § 31706 provides:

(a) **Civil actions.**—On request of the Secretary of Transportation, the Attorney General may bring a civil action in a court of competent jurisdiction to enforce compliance with sections 31704 and 31705 of this title.

(b) **Venue.**—An action under this section may be brought only in the State in which an order is required to enforce compliance.

(c) **Relief.**—*Subject to section 1341 of title 28,* the court, on a proper showing—

(1) shall issue a temporary restraining order or a preliminary or permanent injunction; and

(2) may require by the injunction that the State or any person comply with sections 31704 and 31705 of this title.

49 U.S.C. § 31706(a)-(c) (emphasis added).

Thus, to construe the Act as exempting multi-jurisdictional taxation programs such as IFTA from its coverage is inconsistent not only with the Act's overriding purposes, but also with the federal legislation enforcing compliance with IFTA's provi-

sions.[9] We therefore hold that nothing about the multi-jurisdictional nature of IFTA exempts challenges to the state taxes imposed under that agreement, or the agreement itself, from the Act's jurisdictional bar.

2. *The Act applies so long as a party has a remedy in the courts of the state whose law that party challenges.*

■ Plaintiff's second argument presents a narrower question of statutory interpretation. Focusing on the repetition of the term "State" in the text of the statute, Plaintiff contends that the Tax Injunction Act bars federal jurisdiction only if the state that collects taxes also provides a remedy for all taxes that it collects. Thus, Plaintiff argues, because the Act proscribes federal jurisdiction over actions that interfere with "the assessment, levy or collection of any tax *under State law*" only if a "remedy may be had in the courts of *such State*," the Act's jurisdictional bar comes into play only if Oregon provides a refund remedy for taxes imposed by all the other jurisdictions. 28 U.S.C. § 1341 (emphasis added). We disagree.

■ Plaintiff's argument rests on the assumption that the phrases "such State" and "under State law" refer to the state whose law controls "the assessment, levy or collection" of a tax. That is by no means the only plausible reading of the statute. "The canons of statutory construction include the principle that '[r]eferential and qualifying phrases, where no contrary intention appears, refer solely to

the last antecedent.' " *Longview Fibre Co. v. Rasmussen,* 980 F.2d 1307, 1311 (9th Cir.1992) (quoting 2A Singer, *Sutherland—Statutory Construction* § 47.33 (5th ed.1992)). Accordingly, in the absence of a contrary legislative intent, we would conclude that "State law" and "such State" qualify "any tax," meaning that the Act applies so long as Plaintiff may seek a remedy in the courts of the states that actually impose fuel taxes. At the very least, the statute is ambiguous with respect to this interpretive issue. "Where the language is not dispositive, we look to the congressional intent 'revealed in the history and purposes of the statutory scheme.' " *United States v. Buckland,* 289 F.3d 558, 565 (9th Cir.2002) (en banc) (quoting *Adams Fruit Co. v. Barrett,* 494 U.S. 638, 642, 110 S.Ct. 1384, 108 L.Ed.2d 585 (1990)). Thus, we turn to other sources for what illumination they may provide.

Aside from its general concern with protecting state revenues, Congress viewed the Act as a mechanism for steering challenges to state tax laws into state courts:

> When a State question arises under a State statute, why not let the courts of that State settle that controversy, whether the controversy is between citizens of one State or citizens of two different States? Why not be logical and let the State courts try controversies arising under State laws within their borders.

81 Cong. Rec., at 1417 (quoting the Johnson Act's legislative history).[10] In *Grace Brethren Church,* the Court made clear that even when a challenge to a state tax

---

9. When Congress has intended to exempt a certain category of challenges to state tax collection from the Act's coverage, it generally has made that intent explicit. *See, e.g., Burlington N. R.R. Co. v. Okla. Tax Comm'n,* 481 U.S. 454, 457–58, 107 S.Ct. 1855, 95 L.Ed.2d 404 (1987) (discussing the later-re-

pealed provisions of 49 U.S.C. § 11503 allowing railroads to challenge allegedly discriminatory state taxes in federal district courts).

10. The Johnson Act bars federal jurisdiction over challenges to "any order affecting rates chargeable by a public utility and made by a

raises federal questions, those challenges nonetheless properly belong in a state court, because the "federal constitutional issues are likely to turn on questions of state tax law, which, like issues of state regulatory law, are more properly heard in the state courts." 457 U.S. at 410, 102 S.Ct. 2498 (internal quotation marks omitted).

In other words, the Act furthers two distinct comity concerns. First, "[t]he Act is a gesture of comity toward states; recognizing the centrality of tax collection to the operation of government, the Act prevents taxpayers from running to federal court to stymie the collection of state taxes." *Wright v. Pappas,* 256 F.3d 635, 636 (7th Cir.2001). Second, recognizing that challenges to state tax laws are "more properly heard in the state courts," the Act ensures that state courts are able to entertain challenges to their own tax laws in the first instance. *Grace Brethren Church,* 457 U.S. at 410, 102 S.Ct. 2498.

In the ordinary case, the Act's "gesture of comity" will yield a clear result because the same state's law will provide for the assessment, levy, *and* collection of a tax. Nonetheless, we find it significant that Congress chose to use the disjunctive when referring to the "assessment, levy *or* collection of any tax under State law." 28 U.S.C. § 1341 (emphasis added). In the case of a multi-jurisdictional arrangement such as IFTA, one state's law imposes—or

levies [11]—the tax in question, while another state's law provides for the assessment and collection of that tax. Thus, reading the Act disjunctively, identifying the jurisdiction that must supply the appropriate remedy requires us to explore the nature of Plaintiff's claim. If its challenge is to the assessment or collection of a fuel tax, then its action belongs in the courts of its base jurisdiction. On the other hand, if it challenges the imposition of a specific fuel tax, it must seek its remedy in the state that imposes that tax.

Complicating matters here, Plaintiff brought two distinct challenges in the state administrative proceedings. First, Plaintiff argued that fuel consumed while idling was not a "taxable event" under IFTA and that IFTA trumped state fuel taxes that would otherwise tax fuel consumed while idling. Second, Plaintiff argued that various state statutes exempted from taxation fuel consumed while idling.

Both challenges interfere with the "assessment, levy or collection of any tax under State law." *Id.* As noted above, IFTA, although federally mandated, is enacted, implemented, and administered by the states and their IFTA representatives. Oregon has enacted and implemented IFTA through state statutes and administrative regulations. Oregon's IFTA is a state, rather than a federal, law, and it is a law under which state taxes are assessed and collected.[12] Therefore, the Act bars

State administrative agency or rate-making body of a State political subdivision," subject to certain conditions, including the availability of a "plain, speedy and efficient remedy ... in the courts of such State." 28 U.S.C. § 1342. The Tax Injunction Act was modeled in part on the Johnson Act. *Rosewell v. LaSalle Nat'l Bank,* 450 U.S. 503, 512–14, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1981).

**11.** Although the Act itself does not define this term, the ordinary meaning of "levy" is "to impose or collect (as a tax or tribute) by legal process or by authority." *Webster's Third*

*New International Dictionary* 1301 (1993). *See also Random House Dictionary of the English Language* 824 (1969) (defining "levy" as "to impose (a tax))".

**12.** The Seventh Circuit has reached a similar conclusion with respect to the closely-related International Registration Plan (IRP). In *Schneider Transport, Inc. v. Cattanach,* 657 F.2d 128 (7th Cir.1981), the plaintiff challenged fees raised under IRP, a multi-state cooperative vehicle-registration system for interstate motor carriers that relies on "base jurisdictions," much as IFTA does. The

federal jurisdiction of Plaintiff's challenge to the interpretation of the IFTA so long as Plaintiff has an adequate remedy in Oregon courts *with respect to Plaintiff's challenge to IFTA.*

With respect to Plaintiff's challenge to the individual state statutes under which fuel taxes are imposed, by contrast, the Act directs Plaintiff to seek relief in the courts of those individual states. If Plaintiff argues, for example, that Wisconsin's fuel tax exempts fuel consumed while idling, then "such State" refers to Wisconsin because Plaintiff is challenging a tax that is levied under Wisconsin state law. So long as Plaintiff has a plain, speedy, and efficient remedy in Wisconsin courts, the Act bars federal jurisdiction because Plaintiff's challenge would "enjoin, suspend or restrain" the levy of a tax "under State law."

We therefore hold that whether the Act applies depends on the availability and adequacy of a state-court remedy with respect to each distinct state law that Plaintiff challenges. Because Oregon is Plaintiff's base jurisdiction, Plaintiff's challenge to the structure and validity of IFTA represents a challenge to an Oregon state law under which taxes are assessed and collected. Plaintiff's remedy for that challenge thus lies in Oregon state court. By contrast, Plaintiff's challenge to an underlying state tax that Oregon collects properly belongs in the state whose law authorizes the imposition of that tax. Looking at those remedies separately, the Act bars federal jurisdiction so long as those remedies are "plain, speedy and efficient."

---

plaintiff argued that fees assessed under IRP are not assessed "under State law." In rejecting that argument, the Seventh Circuit noted that "the International Registration Plan has no independent force of law, but must be adopted by the legislature of each signatory state.... Once so adopted, the IRP is enforceable as a Wisconsin statute." *Id.* at 132 (citation and footnote omitted). The

**B.** *Plaintiff has a plain, speedy, and efficient remedy with respect to its challenges to both IFTA and the underlying state fuel taxes.*

■ Even when the Act applies, it deprives a district court of jurisdiction only when "a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. Federal courts "must construe narrowly [this] exception to the Tax Injunction Act." *Grace Brethren Church*, 457 U.S. at 413, 102 S.Ct. 2498. Whether the exception to the Act's jurisdictional bar applies depends on whether a state-court remedy meets "certain minimal *procedural* criteria." *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 512, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1981). Particularly, the party challenging the state tax must receive "a full hearing and judicial determination" in which that party may assert federal rights. *Id.* at 513, 101 S.Ct. 1221 (quoting 81 Cong. Rec. 1416). "Substantive" burdens on the party challenging a state tax, such as the necessity of traveling across state lines, do not lift the Act's jurisdictional bar. *Tully v. Griffin, Inc.*, 429 U.S. 68, 73, 97 S.Ct. 219, 50 L.Ed.2d 227 (1976).

■ For state-court remedies to be "plain," the procedures available in state court must be certain. *See Direct Mktg. Ass'n, Inc. v. Bennett*, 916 F.2d 1451, 1453 (9th Cir.1990) (holding that a state remedy "is not plain within the meaning of the Tax Injunction Act ... 'if there is uncertainty regarding its availability or effect.' " (quoting *Ashton v. Cory*, 780 F.2d 816, 819 (9th

---

court therefore held that the registration fees at issue in that case were taxes " 'under State law.' " *Id.* Just as IRP, through legislative adoption, has become Wisconsin state law, Oregon's adoption of IFTA translates that agreement to a state law under which state taxes—albeit not Oregon's—are "assessed, levied, or collected."

Cir.1986))). The "efficiency" of a state-court remedy generally turns on whether it imposes an "unusual hardship on [the party challenging the state tax] requiring ineffectual activity or an unnecessary expenditure of time or energy." *Rosewell,* 450 U.S. at 518, 101 S.Ct. 1221.

1. *Plaintiff's remedy in Oregon state courts for alleged violations of IFTA.*

■ The Oregon administrative regulations implementing IFTA provide for prompt administrative review of any alleged errors in the assessment of taxes owed under IFTA. Specifically, those regulations state:

(e) Any person against whom a proposed assessment is made by the Department may petition the Department for reassessment within 30 days after service upon the person of the assessment notice.... If a petition for reassessment is timely filed, the Department will reconsider the assessment. The decision of the Department upon a petition for reassessment will become final 30 days after notice of the decision is served upon the petitioner. A petitioner may submit a request for hearing in the petition for reassessment; and

(f) If a request for hearing is timely received, a hearing will be scheduled and conducted in accordance with the provision of ORS Chapter 183. The petitioner will be provided a minimum of 10 days notice of the time and place of the hearing.

Or. Admin. R. 740–200–0040(2)(e)–(f).

Plaintiff availed itself of this administrative remedy in the state proceedings below and, in part, was successful. In a proposed order, the ALJ rejected ODOT's audit because the audit used an unreasonable estimate of miles per gallon, and the parties have settled that issue on the merits. Ultimately, the State concluded that fuel consumed during idling is subject to taxation under IFTA and denied Plaintiff's request for a refund. That final order notified Plaintiff of its right to petition for review with the Oregon Court of Appeals within sixty days, pursuant to the state Administrative Procedures Act, Oregon Revised Statute section 183.482. Indeed, Plaintiff filed such a petition and its case is pending before the Oregon Court of Appeals.

Nothing in the law or in the record suggests that Plaintiff's access to a full and fair hearing in Oregon courts is, in any sense, uncertain. Oregon courts can and do entertain challenges to agency interpretations of relevant state tax laws. *See, e.g., Denniston v. Dep't of Revenue,* 287 Or. 719, 601 P.2d 1258, 1265 (1979) (reversing the Department of Revenue's deficiency assessment because it included gain that was not taxable under applicable state statutes). Further, a party may challenge the validity or constitutionality of any law "whereby taxes [are] assessed or imposed" in Oregon courts and, if successful, may obtain a refund. Or.Rev.Stat. § 305.765.[13]

---

13. Specifically, Oregon Revised Statutes section 305.765 states:

In a proceeding involving the validity of any law whereby taxes assessed or imposed have been collected and received by the state, acting through any department or agency thereof, and paid into the State Treasury, if the court of last resort holds the law or any part thereof invalid, and the time limit for any further proceeding to sustain the validity of the law, or the part thereof affected, has expired, and if there is no other statute authorizing refund thereof, all taxes collected and paid under the law or part thereof invalidated, in or after the year in which the action attacking the validity of the same was instituted, shall be refunded and repaid in the manner provided in ORS 305.770 to 305.785.

■ Plaintiff nonetheless contends that it does not have a plain, speedy, and efficient remedy in Oregon courts because the State has already concluded that IFTA does not provide a refund remedy for fuel consumed while idling. Plaintiff's argument confuses its entitlement to a full and fair hearing with its entitlement to a favorable resolution on the merits. Although the Act conditions its jurisdictional bar on the former, "the likelihood of plaintiff's success in the state court is not a factor to be considered when determining whether the jurisdictional prohibition of § 1341 applies." *Cities Serv. Gas Co. v. Okla. Tax Comm'n,* 656 F.2d 584, 586 (10th Cir.1981). Nothing prevents Plaintiff from challenging the State's unfavorable ruling in a full and fair hearing in Oregon state court, and, if successful, from receiving a refund. We therefore hold that, with respect to its challenge to IFTA, Plaintiff has a plain, speedy, and efficient remedy.

2. *Plaintiff's remedy in state courts for its challenge to the underlying fuel taxes.*

■ Plaintiff argues that it does not have an efficient state-court remedy because, should the Act's jurisdictional bar apply, it would be forced to bring a separate state-court action for each fuel tax that it seeks to challenge. Plaintiff urges us to adopt the reasoning of *U.S. Steel Corp. v. Multistate Tax Commission,* 367 F.Supp. 107 (S.D.N.Y.1973), which held that "[t]he necessity for such a multiplicity of actions cannot by any stretch of the imagination be considered a viable alternative to federal suit, but rather, falls into that category of state remedies which are considered unduly burdensome." *Id.* at 115–16 (internal quotation marks omitted).

*U.S. Steel* found support for its holding in *Georgia Railroad & Banking Co. v. Redwine,* 342 U.S. 299, 72 S.Ct. 321, 96 L.Ed. 335 (1952). There, the Court held that a plaintiff did not have a "plain,

speedy and efficient remedy" because the available remedy in state court would require the filing of more than three hundred separate claims in fourteen different counties. *Id.* at 303, 72 S.Ct. 321. In so holding, *Redwine* imported the multiplicity-of-suits rationale from principles of equity jurisdiction into the context of the Act's exception for inefficient state remedies. *See also* Richard H. Fallon, Jr., et al., *Hart and Wechsler's The Federal Courts and Federal System* 1173–74 (5th ed.2003) (noting that early Supreme Court cases viewed "a plain, speedy and efficient remedy" as synonymous with an "adequate" remedy in pre-Act equity practice). As the Court noted in *Matthews v. Rodgers,* 284 U.S. 521, 529, 52 S.Ct. 217, 76 L.Ed. 447 (1932), "to avoid the necessity of ... many suits, equity may draw to itself the determination of the issue necessarily involved in all the suits at law."

Plaintiff's reliance on *U.S. Steel* and *Redwine* is misplaced for two reasons. First, it is unclear that the wholesale adoption of principles of equity practice in *Redwine* and *U.S. Steel* has withstood the Court's decision in *Rosewell.* There, the Court made clear that the Act set a more stringent standard for procedural inadequacy than that which had existed under equity practice. *Rosewell* concluded that "[n]othing in our decisions suggests that every wrinkle of federal equity practice was codified, intact" in the Act and that Congress "legislated to solve an existing problem by *cutting back* federal equity jurisdiction." 450 U.S. at 525–26, 101 S.Ct. 1221.

Second, even in equity practice, the multiplicity-of-suits rationale was qualified by the presence of some identity of parties or issues:

[T]he jurisdiction of equity to avoid multiplicity of suits at law is restricted to cases where there would otherwise be

some necessity for the maintenance of numerous suits between the same parties, involving the same issues of law or fact. It does not extend to cases where there are numerous parties plaintiff or defendant, and the issues between them and the adverse party are not necessarily identical.

*Matthews,* 284 U.S. at 529–30, 52 S.Ct. 217. The Supreme Court's later discussions of the multiplicity-of-suits rationale in the context of challenges to state tax laws suggest that the rationale works an exception to the Act's jurisdictional bar only in "extraordinary circumstances" in which a party would otherwise be required to litigate the *same* legal issue repeatedly against the *same* taxing authority:

> [T]here may be extraordinary circumstances under which injunctive or declaratory relief is available even when a legal remedy exists.... As we have made clear, however, the multiplicity-of-suits rationale for permitting equitable relief extends only to those situations where there is a real risk of "numerous suits between the same parties, involving the same issues of law or fact." [*Matthews,*] 284 U.S. [at 530, 52 S.Ct. 217.] Thus, if a state court awards a refund to a taxpayer on the ground that the tax violates the Federal Constitution, but state tax authorities continue to impose the unconstitutional tax, injunctive and declaratory relief might then be appropriate. In such circumstances, the remedy might be thought to be "inadequate."

*Nat'l Private Truck Council, Inc. v. Okla. Tax Comm'n,* 515 U.S. 582, 591 n. 6, 115 S.Ct. 2351, 132 L.Ed.2d 509 (1995) (citation omitted).

Significantly, most cases that apply the multiplicity-of-suits rationale to find an exception to the Act's jurisdictional bar do so when the alternative would be a series of nearly indistinguishable tax disputes. In *Redwine,* for example, the alternative to a federal suit was the filing of literally hundreds of separate claims in order to bring a single federal claim challenging a single amendment to the Georgia Constitution. 342 U.S. at 303, 72 S.Ct. 321. Similarly, in *Garrett v. Bamford,* 538 F.2d 63, 71–72 (3d Cir.1976), the Third Circuit held that the Act did not apply because the available state-court remedy would require the plaintiff to relitigate the same issue against the same taxing authority every year.

In *Strescon Industries, Inc. v. Cohen,* 508 F.Supp. 786 (D.Md.1981), on the other hand, the district court held that the Act deprived it of subject matter jurisdiction because, although the plaintiff would be forced to bring separate claims in separate state courts regarding the same taxable event, those claims involved challenges to different state laws: "The question of Maryland's relationship to the transaction in issue and the question of Pennsylvania's relationship to that transaction are wholly distinct issues which the Court concludes must be litigated through the state remedies provided for under the mandate of 28 U.S.C. § 1341." *Id.* at 788. The court therefore rejected the plaintiff's reliance on *U.S. Steel* because "the instant suit does not seek determination of the precise same issue in Pennsylvania and Maryland." *Id.*

We find *Strescon's* reasoning persuasive. Plaintiff is not required to relitigate the proper interpretation or constitutionality of IFTA in multiple proceedings. Once the Oregon state court proceedings have arrived at a final determination of the issue whether taxes on fuel consumed while idling are "taxable" under IFTA, Plaintiff is entitled to rely on that determination. Plaintiff's challenge to the underlying fuel taxes, on the oth-

er hand, involves distinct legal questions and different taxing authorities. There is no danger of *needless* repetition.

Further, Plaintiff has failed to demonstrate that challenging various state taxes in the various state courts whose taxes are involved imposes an *"unusual* hardship" on Plaintiff. *Rosewell*, 450 U.S. at 518, 101 S.Ct. 1221 (emphasis added). By requiring Plaintiff to seek a refund remedy for tax-exempt fuel from each jurisdiction that imposes a fuel tax, IFTA places no greater burden on Plaintiff than the burden it would face in the absence of IFTA. With respect to both the Act's purpose and its exception, IFTA merely preserves the status quo. By coordinating the efforts of the multiple taxing jurisdictions, IFTA does not make the revenue-protective and comity concerns behind the Act any less relevant. Similarly, that coordination does not heighten the standards for state-court remedies that, in the absence of IFTA, clearly would be "plain, speedy and efficient."

For these reasons, we hold that Plaintiff has a plain, speedy, and efficient remedy with respect to the interpretation and validity of both IFTA and the underlying state fuel taxes.

C. *Plaintiff's challenge to IFTA and underlying state taxes "enjoins, suspends or restrains" state tax collection.*

■ Precedents from the Supreme Court and this court foreclose Plaintiff's argument that it does not seek to "enjoin, suspend or restrain" state tax collection because it merely seeks a refund and a declaration that fuel consumed while idling is not subject to taxation. In *Grace Brethren Church*, the Court held that the Act applies to actions for declaratory relief, because the "declaratory judgment 'procedure may in every practical sense operate

to suspend collection of the state taxes until the litigation is ended.' " 457 U.S. at 408, 102 S.Ct. 2498 (quoting *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 299, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943)); *see also Patel v. City of San Bernardino*, 310 F.3d 1138, 1140 (9th Cir. 2002) (recognizing that the Act prohibits both declaratory and injunctive relief in state tax disputes).

As a general matter, we have adopted a functional approach when determining whether an action for a refund of taxes falls under the Act's jurisdictional bar. In *Marvin F. Poer & Co. v. Counties of Alameda*, 725 F.2d 1234, 1236 (9th Cir. 1984), we held that, "although the language of the Act does not specifically cover actions for refund or damages, federal court consideration of such cases must be barred lest the Tax Injunction Act be deprived of its full effect." *See also Wright*, 256 F.3d at 636 (noting that, in order "to prevent the Act from being completely undone," courts have held that it applies to suits for refund of state taxes).

Here, the relief sought would interfere directly with Oregon's tax collection efforts as well as interfere indirectly with revenue generation in every state in which Plaintiff operates. Because "[f]ederal-court relief ... would [operate] to reduce the flow of state tax revenue," *Hibbs*, 124 S.Ct. at 2288, Plaintiff's action would enjoin, suspend, or restrain state tax collection within the meaning of the Act. Plaintiff's arguments to the contrary are unpersuasive.

## CONCLUSION

We hold that the Act applies to Plaintiff's challenge to IFTA and to the underlying state fuel taxes. We further hold that Plaintiff has a plain, speedy, and efficient state-court remedy with respect to

both claims. Accordingly, the federal court lacks subject matter jurisdiction.

AFFIRMED.