**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

KATHY ARMSTRONG, individual; et al.,

Plaintiffs-Appellants,

v.

GENE WALBORN, in his official
capacity as Director of the Montana
Department of Revenue,

Defendant-Appellee.

No.   16-35422

D.C. No. 6:15-cv-00114-SEH

MEMORANDUM*

Appeal from the United States District Court
for the District of Montana
Sam E. Haddon, District Judge, Presiding

Argued and Submitted March 6, 2018
Seattle, Washington

Before:  RAWLINSON and CHRISTEN, Circuit Judges, and BENCIVENGO,**
District Judge.

Plaintiffs appeal the district court's dismissal of their challenge to a Montana

regulation that denies a tax credit for donations applied towards religious

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Cathy Ann Bencivengo, United States District Judge
for the Southern District of California, sitting by designation.

education.[1]  We have jurisdiction under 28 U.S.C. § 1291.  We conclude that the Tax Injunction Act (TIA) deprives the federal courts of subject matter jurisdiction over the Armstrongs' claims and affirm the district court's dismissal of their action.

The TIA prohibits federal courts from "enjoin[ing], suspend[ing] or restrain[ing] the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."  28 U.S.C § 1341.  The statute "serves 'state-revenue-protective objectives' and accordingly applies only if the requested relief would 'reduce the flow of state tax revenue.'"  *Fredrickson v. Starbucks Corp.*, 840 F.3d 1119, 1123 (9th Cir. 2016) (quoting *Hibbs v. Winn*, 542 U.S. 88, 104, 106 (2004)); *see May Trucking Co. v. Or. Dep't of Transp.*, 388 F.3d 1261, 1267 (9th Cir. 2004).

The Armstrongs' complaint alleged that they are taxpayers who intend to donate to Student Scholarship Organizations under the Montana Scholarship Tax

---

[1]As the parties are familiar with the facts, we do not recount them here.

Credit Program were their suit to be successful.[2]  "To determine whether this litigation falls within the TIA's prohibition, it is appropriate, first, to identify the relief sought."  *Hibbs*, 542 U.S. at 99.  We then "appl[y] a searching analysis of the *effect* of federal litigation on the state's ability to collect revenues . . . ."  *Winn v. Killian*, 307 F.3d 1011, 1017 (9th Cir. 2002) (emphasis in original). Unlike the plaintiffs in *Winn*, the Armstrongs are challenging the *denial* and not "the granting of a state tax credit."  *Id.*; *see Griffin v. Cnty. Sch. Bd. of Prince Edward Cnty.*, 377 U.S. 218 (1964).  This distinction is crucial.  We observed in *Winn* that if plaintiffs there had prevailed, the state's revenue stood to be increased—because its tax collections stood to be increased—by the elimination of the offending tax credits. The Armstrongs seek the opposite outcome.  Their complaint demands that the state recognize tax credits for donations supporting religiously-affiliated educational institutions.  As such, Montana will be required to extend additional tax credits, resulting in the "deplet[ion] [of] state coffers" if the Armstrongs prevail.  *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 425 (2010).  "[B]ecause a

---

[2] In a 28(j) letter filed after oral argument was heard in this case, the Armstrongs suggest, for the first time, that they are "only challeng[ing] the restriction on money *already donated* for use at solely secularly schools." Rule 28(j), however, is not a proper device for amending pleadings or raising new issues and we do not sanction its use here.  *Brady v. Gebbie*, 859 F.2d 1543, 1557 n.13 (9th Cir. 1988).

federal court order requiring a state to grant a tax refund is functionally equivalent to an order preventing the collection of taxes," it is subject to the TIA. *Winn*, 307 F.3d at 1017 (citing *Dillon v. State of Mont.*, 634 F.2d 463 (9th Cir.1980)).

The TIA only bars federal courts from considering this type of challenge if a plain, speedy and efficient remedy may be had in state court. Because a case raising the same issues as those presented by the Armstrongs has succeeded on the merits in state district court and is currently on appeal to the Montana Supreme Court, we are persuaded that Montana's state courts provide plaintiffs "a plain, speedy and efficient remedy." 28 U.S.C § 1341. The district court therefore lacked subject matter jurisdiction over the Armstrongs' claims.[3]

**AFFIRMED in part; decision RESERVED in part.**

The panel retains jurisdiction over this appeal.

---

[3] Application of the TIA to claims asserted by the Association of Christian Schools International has not been briefed by the parties. They are therefore ordered to file, within 14 days of the filing date of this memorandum disposition, simultaneous letter briefs not longer than 15 pages addressing this issue. Contrary to the dissent's suggestion, we make no ruling on the Association's claims. Instead, by separate order we provide an opportunity for the remaining parties to brief the applicability of the TIA. When that briefing is received, we will rule on the remaining issues.

***Armstrong v. Walborn*, Case No. 16-35422**
**Rawlinson, Circuit Judge, dissenting:**

I respectfully dissent from the majority's conclusion that the Tax Injunction

Act stripped the district court of jurisdiction over this case.

The majority's conclusion ignores the explicit holding in *Winn v. Killian*,

307 F.3d 1011, 1017 (9th Cir. 2002), that the Tax Injunction Act does not apply to

tax credits. ("The invalidation of a tax credit . . . does not adversely affect the

state's ability to raise revenue"). Our ruling was upheld by the Supreme Court in

*Hibbs v. Winn*, 542 U.S. 88 (2004). Although not as explicit as our ruling, the

Supreme Court agreed that the Tax Injunction Act applies only to actions seeking

to "restrain the Commissioner from collecting taxes," not actions seeking

exemptions after the taxes have been collected. *Id.* at 103.

The majority seeks to distinguish our holding in *Winn* by pointing out that

the Armstrongs are challenging the denial of a state tax credit rather than the grant

of a state tax credit. For starters, the record reflects that the Armstrongs have never

been denied a tax credit. Rather, the Armstrongs challenge the manner in which

the donations generating tax credits are distributed. See Complaint ¶ 6 ("Kathy

and Jerry Armstrong are also taxpayers in the State of Montana. They would

donate to Student Scholarship Organizations under the Montana Scholarship Tax

1

Credit Program, if their donations could be used at religious schools. They do not intend to donate to a Student Scholarship Organization unless their donations could be used at religious schools.")

The fact remains that the Armstrongs are eligible for the tax credit, as is every other Montana taxpayer. *See* Mont. Code Ann. § 15-30-3111(1). The Armstrongs have not been denied a tax credit, are not seeking to avoid a tax liability and no tax refund request is pending. Because the taxes have already been collected for donation purposes, the Armstrongs' requests for declaratory and injunctive relief can only affect the recipients of the donations, not the amount of money collected for the public fisc. *See Hibbs*, 542 U.S. at 103.

The Armstrongs never challenged the statute establishing the tax credit. They never sought to enjoin the grant or denial of tax credits to any particular group or individual. Of their own volition, they opted not to participate in the tax credit program because they disagree, on religious grounds, with the way the donations are administered *after* tax credits are dispersed to the program.[1] If the Armstrongs prevail, the donations may be dispersed more widely, but the outcome

_____

[1]The 28(j) letter referenced by the majority only memorialized the Armstrongs' position taken from the outset, consistent with the structure of the statute, which comes into play only *after* taxes have been collected. Interestingly, not one party to this case agrees with the majority that the Tax Injunction Act bars this appeal.

will not "operate[ ] to reduce the flow of state tax revenue." *May Trucking Co. v. Oregon Dep't of Transp.*, 388 F.3d 1261, 1267 (9th Cir. 2004).

The majority disposition also disposes of the claims of plaintiff Association of Christian Schools International (Association). The Association alleged that it is "a non-profit, non-denominational, religious association providing support services to nearly 24,000 Christian schools in over 100 countries." The Association complains that because it "is a religious organization, none of the schools that it accredits is eligible to enroll the students who receive scholarships under the Scholarship Tax Credit Program." The Association asserts that religious schools are being "deprive[d] . . . of their constitutionally protected rights to compete on equal terms with non-religious schools, and will force them to choose between maintaining their status as a religious school and participating in the Montana Scholarship Tax Credit Program." *See* Complaint, ¶ 7.

The allegations of the Association are even further removed from the flow of public funds, and it is difficult to imagine how the Tax Injunction Act bars this religious discrimination claim.

I respectfully dissent.