**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MARVIN WILBUR, JR., Trustee of
the SALISH TRUST dba Trading Post
at March Point; MARVIN WILBUR,
SR.; JOAN WILBUR,
             *Plaintiffs-Appellants,*

v.

GARY LOCKE, Governor of the
State of Washington; FREDERICK
KIGA, Director, Revenue
Department of the State of
Washington; GARY O'NEIL,
Assistant Director, Revenue
Department of the State of
Washington; REVENUE
DEPARTMENT OF THE STATE OF
WASHINGTON; STATE OF
WASHINGTON,
             *Defendants-Appellees.*

No. 03-35911

D.C. No.
CV-03-00873-RSL

OPINION

Appeal from the United States District Court
for the Western District of Washington
Robert S. Lasnik, District Judge, Presiding

Argued and Submitted
May 6, 2005—Seattle, Washington

Filed September 9, 2005

Before: J. Clifford Wallace, Barry G. Silverman, and
Richard A. Paez, Circuit Judges.

Opinion by Judge Wallace

12843

**COUNSEL**

James E. Lobsenz, Carney Badley Spellman, P.S., Seattle, Washington, for the plaintiffs-appellants.

Christine O. Gregoire, Attorney General, and David M. Hankins, Assistant Attorney General, Olympia, Washington, for the defendants-appellees.

**OPINION**

WALLACE, Senior Circuit Judge:

The plaintiffs sought relief from an anticipated contract between the State of Washington and the Swinomish Indian

Tribe (Tribe) regarding taxation of cigarette sales by Indian retailers. The district court held that the Tax Injunction Act (TIA), 28 U.S.C. § 1341, barred the action and dismissed it. The district court had jurisdiction over this timely appeal pursuant to 28 U.S.C. §§ 1331 and 2201, and we have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm, but on grounds different from the district court.

I.

Washington law authorizes the Governor "to enter into contracts concerning the sale of cigarettes" with certain Indian tribes. Wash. Rev. Code § 43.06.450. Such contracts must "provide for a tribal cigarette tax in lieu of all state cigarette taxes and state and local sales and use taxes on sales of cigarettes in Indian country by Indian retailers," but the tribe may "allow an exemption for sales to tribal members." *Id.* § 43.06.455(3). The contracts must also "provide that the tribal cigarette tax rate be one hundred percent of the state cigarette and state and local sales and use taxes within three years of enacting the tribal tax." *Id.* § 43.06.460. Tax revenue retained by a tribe must be used for certain statutorily defined "essential government services." *Id.* § 43.06.455(8), (14)(a). Thus, cigarette tax contracts must provide that the state will not impose any tax, and must require a tribe to collect taxes effectively equal to the previously imposed state taxes, and use the revenue for essential government services. In addition, cigarette tax contracts must include a number of provisions regulating Indian retailers' activities, such as provisions requiring tax stamps, governing the purchase of cigarettes by retailers, and ensuring compliance. *Id.* § 43.06.455(4), (5), (7).

Marvin Wilbur, Jr., Marvin Wilbur, Sr., and Joan Wilbur are enrolled members of the Tribe and the operators of a retail store located on trust land within the Swinomish Indian Reservation. In April 2003, the Wilburs filed an action against various Washington officials and the Department of Revenue

(State) alleging that the State and the Tribe were negotiating a cigarette tax contract. They alleged that the statutes governing cigarette tax contracts and the proposed agreement violated the Indian Commerce Clause, U.S. Const. art. I, § 8, cl. 3, the Sherman Antitrust Act, 15 U.S.C. §§ 7-276, the Treaty of Point Elliot, 12 Stat. 927 (Jan. 22, 1855), and a host of other constitutional and statutory provisions. The Tribe was not named as a defendant.

The complaint requested, among other relief, a declaratory judgment that Wash. Rev. Code §§ 43.06.450, 43.06.455, and 43.06.460 are "void, unlawful and unenforceable as applied to cigarettes transported, distributed, received or sold by Plaintiffs' retail businesses located within the exterior boundaries of the Swinomish reservation"; an injunction "preventing the Defendants from enforcing any provision of the statutes or contracting in any way with the Swinomish Tribe or any person or entity regarding a cigarette tax on any cigarettes to be received or sold by Indian-owned retail businesses within the exterior boundaries of the Swinomish Reservation"; and a "declaration that any agreement or contract entered into by the Swinomish Tribe with Defendants is invalid when attempted to be imposed or any way applied to Plaintiffs."

The State filed a motion to dismiss the Wilburs' complaint, arguing that the Wilburs lacked standing, that the TIA and the Eleventh Amendment barred the Wilburs' action, that the Tribe was an indispensable party, and that the complaint failed to state a claim for which relief could be granted. While that motion was pending, the State and the Tribe executed a cigarette tax contract (Compact). However, because the parties did not inform the district court of this fact, the court was under the impression that the Compact was still awaiting approval by the Governor when it granted the State's motion to dismiss. Based largely on this misunderstanding, the court concluded that the Tribe was not a necessary party. The court asserted that the Wilburs "likely" lacked standing, but based its decision on the proposition that the TIA deprived it of sub-

ject matter jurisdiction over the Wilburs' suit. Therefore the district court dismissed the action without discussing the State's other arguments.

## II.

The State urges us to affirm the district court's ruling that the TIA bars this action, or to affirm on one of the other grounds that it argued in the district court or on the additional ground that the case is now moot. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004) ("We may affirm the district court's dismissal on any ground supported by the record"). Because we now know facts, undisclosed to the district court, bringing into question whether the Tribe is an indispensable party pursuant to Rule 19, we first determine whether we may proceed directly to the Rule 19 issue or whether we must first address jurisdictional issues.

The Supreme Court has "adhered to the requirement that a court address questions pertaining to its or a lower court's jurisdiction before proceeding to the merits." *Tenet v. Doe*, 125 S. Ct. 1230, 1235 n.4 (2005), *citing Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94-95 (1998). However,

> [w]hile *Steel Co.* reasoned that subject-matter jurisdiction necessarily precedes a ruling on the merits, the same principle does not dictate a sequencing of jurisdictional issues. "[A] court that dismisses on . . . non-merits grounds such as . . . personal jurisdiction, before finding subject-matter jurisdiction, makes no assumption of law-declaring power that violates the separation of powers principles underlying *Mansfield [C. & L. M. Ry. Co. v. Swan*, 111 U.S. 379 (1884)] and *Steel Company*." It is hardly novel for a federal court to choose among threshold grounds for denying audience to a case on the merits. Thus, as the Court observed in *Steel Co.*, district courts do not

> overstep Article III limits when they decline jurisdiction of state-law claims on discretionary grounds without determining whether those claims fall within their pendent jurisdiction, or abstain under *Younger v. Harris*, 401 U.S. 37 . . . (1971), without deciding whether the parties present a case or controversy.

*Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584-85 (1999) (citations omitted); *see also Kowalski v. Tesmer*, 125 S. Ct. 564, 567 & n.2 (2004) (assuming existence of Article III standing and addressing "alternative threshold question" whether prudential requirements of standing were satisfied).

The difficulty here is that it is unclear whether a Rule 19 issue is the sort of "threshold" question to which a court may directly proceed without first addressing other "threshold" questions. We are unaware of any case discussing how Rule 19 fits within the *Steel Co./Ruhrgas* scheme, and the parties have not briefed the issue. Moreover, it is not always easy to determine whether a particular issue is the type of "threshold" matter which, if decided adversely to the plaintiff, obviates the need to address other threshold questions. *Compare Dominguez-Cota v. Cooper Tire & Rubber Co.*, 396 F.3d 650, 652-54 (5th Cir. 2005) (holding that "district court erred in dismissing the case on forum non conveniens grounds without first determining whether it had subject matter jurisdiction") *with Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine*, 311 F.3d 488, 497-98 (2d Cir. 2002) (holding that court could pass over question of statutory subject matter jurisdiction and "go[ ] directly to [a] forum non conveniens issue"); *compare also Calderon v. Ashmus*, 523 U.S. 740, 745 & n.2 (1998) (stating that court "must first address" whether action presented Article III case or controversy before addressing Eleventh Amendment issue) *and Cox v. City of Dallas*, 256 F.3d 281, 303-04 (5th Cir. 2001) (stating that Article III standing "must be examined before the Eleventh Amendment") *with Snoeck v. Brussa*, 153 F.3d 984, 988 (9th Cir. 1998) ("Because the Eleventh Amendment bar conclu-

sively ends this dispute we need not address the related issue of [Article III] standing which the district court found plaintiffs lacked") *and Pederson v. La. State Univ.*, 213 F.3d 858, 866 (5th Cir. 2000) (addressing issues of Article III standing and state sovereign immunity "in no particular order").

**[1]** Although there is no clear precedent, we conclude that jurisdictional issues should be decided before reaching the Rule 19 issue. This is so because questions of subject matter jurisdiction, "*i.e.*, the courts' statutory or constitutional *power* to adjudicate the case," *Steel Co.*, 523 U.S. at 89, must generally be decided before the merits. *See Ruhrgas*, 526 U.S. at 577 ("[A] federal court may not hypothesize subject-matter jurisdiction for the purpose of deciding the merits"). Thus, we must decide the questions of standing and mootness, both of which "go[ ] to the Article III jurisdiction of this Court and the courts below," *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997), as well as the question whether the TIA barred subject matter jurisdiction. *See Arkansas v. Farm Credit Servs. of Cent. Ark.*, 520 U.S. 821, 825 (1997) ("We have interpreted and applied the Tax Injunction Act as a 'jurisdictional rule' and a 'broad jurisdictional barrier' " (quoting *Moe v. Confederated Salish & Kootenai Tribes of Flathead Reservation*, 425 U.S. 463, 470 (1976))). We have also held that "we may not bypass [an Eleventh Amendment] issue in favor of deciding the case on the merits." *Cardenas v. Anzai*, 311 F.3d 929, 934 n.2 (9th Cir. 2002), *citing Cal. Franchise Tax Bd. v. Jackson (In re Jackson)*, 184 F.3d 1046, 1048 (9th Cir. 1999). Thus, we will decide certain jurisdictional issues before turning to the Rule 19 question.

## III.

"To satisfy Article III's standing requirements, a plaintiff must show (1) she has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as

opposed to merely speculative, that the injury will be redressed by a favorable decision." *Bernhardt v. County of Los Angeles*, 279 F.3d 862, 868-69 (9th Cir. 2002), *quoting Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). "Standing is a question of law reviewed de novo." *Id.* at 867.

"A plaintiff has the burden of establishing the elements required for standing, and '[f]or purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.' " *Takhar v. Kessler*, 76 F.3d 995, 1000 (9th Cir. 1996), *quoting Warth v. Seldin*, 422 U.S. 490, 501 (1975).

"As with all questions of subject matter jurisdiction except mootness, standing is determined as of the date of the filing of the complaint . . . . The party invoking the jurisdiction of the court cannot rely on events that unfolded after the filing of the complaint to establish its standing." *Kitty Hawk Aircargo, Inc. v. Chao*, ___ F.3d ___, 2005 WL 1692613, at *5 (5th Cir. July 20, 2005) (quotation marks and citations omitted); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 570 n.4 (1992) (stating that " '[t]he existence of federal jurisdiction ordinarily depends on the facts *as they exist when the complaint is filed*' " and rejecting argument that events which occurred after filing "retroactively created a redressability (and hence a jurisdiction) that did not exist at the outset" (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989) (emphasis in *Lujan*))). Thus, we examine whether the Wilburs had standing under the facts extant at the time of filing, when the Compact had not yet been signed.

The complaint alleged anticipated injuries from two types of provisions in the proposed Compact. The first anticipated injury concerns provisions of the Compact imposing taxes on sales to other tribe members and the second anticipated injury

relates to compliance with the regulatory scheme articulated in Wash. Rev. Code § 43.06.455(4), (5), (7). We need not get to the first if we conclude that the Wilburs had standing to seek prospective relief to prevent the regulatory burden. We therefore turn to that issue.

**[2]** The regulations contemplated by the proposed Compact would cause the Wilburs cognizable economic injury by forcing them to incur additional costs. *See Clark v. City of Lakewood*, 259 F.3d 996, 1007 (9th Cir. 2001) (" 'The Court routinely recognizes . . . economic injury resulting from governmental actions . . . as sufficient to satisfy the Article III 'injury in fact' requirement' " (quoting *Clinton v. City of New York*, 524 U.S. 417, 432-33 (1998))). The district court stated that because the Compact had not been executed, the injury was "likely" not "actual or imminent." However, the Wilburs sought a declaration that the challenged statutes were invalid, an injunction preventing the consummation of any cigarette tax contract pursuant to those statutes, and a declaration that any contract actually executed was invalid. While plaintiffs seeking injunctive and declaratory relief "must show that the feared harm is 'actual or imminent, not conjectural or hypothetical,' '[o]ne does not have to await the consummation of threatened injury' before challenging a statute." *Canatella v. State of California*, 304 F.3d 843, 852 (9th Cir. 2002), *quoting Lujan*, 504 U.S. at 560, *and Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). Nothing in the complaint suggests that, at the time of filing, the Compact's consummation was not " '*certainly* impending.' " *Lujan*, 504 U.S. at 564 n.2, *quoting Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990). On the contrary, the complaint alleged that the State and Tribe were in negotiations and that the Compact would be executed "within the near future." At the pleading stage, we accept this allegation as true. *See Takhar*, 76 F.3d at 1000. Thus, the prospect of injury to the Wilburs from the proposed Compact was sufficiently imminent to satisfy the requirement of an injury in fact.

**[3]** The causation and redressability requirements are also satisfied. True, the Wilburs' injury was partly dependent on the actions of the Tribe, in the sense that the Compact could not be executed without its participation. *See Yesler Terrace Cmty. Council v. Cisneros*, 37 F.3d 442, 446 (9th Cir. 1994) ("[I]t usually is difficult to establish causation and redressibility when a plaintiff's alleged injury depends on the actions of a third party not before the court"). But the opposite is also true: had the State not enacted statutes authorizing cigarette tax contracts and negotiated with the Tribe, the prospect of injury from the proposed Compact would not have materialized. Thus, the Wilburs' injuries are adequately traceable to the State's actions. *See Artichoke Joe's v. Norton*, 216 F. Supp. 2d 1084, 1104 (E.D. Cal. 2002) (where plaintiffs sued Governor and sought declaration that gaming compacts between state and Indian tribes violated federal law, causation was satisfied because "the Governor approved the compacts that gave rise to the plaintiffs' injuries"), *aff'd*, 353 F.3d 712, 719 n.9 (9th Cir. 2003) (agreeing with district court's standing analysis). Indeed, we have held that causation was satisfied at the pleading stage where the connection between the defendants' conduct and the plaintiff's injury was more tenuous than that involved here. *See Bernhardt*, 279 F.3d at 869 (where plaintiff alleged that "[a]s a direct result of the [County's policy of settling civil rights actions for a lump sum including attorney fees], plaintiff has been unable to obtain a civil rights lawyer," plaintiff's "pleading adequately established the causation element required for standing").

**[4]** Redressability likewise is satisfied. "Plaintiffs need not demonstrate that there is a 'guarantee' that their injuries will be redressed by a favorable decision. . . . [P]laintiffs 'must show only that a favorable decision is *likely* to redress [their injuries], not that a favorable decision *will inevitably* redress [their injuries].' " *Graham v. FEMA*, 149 F.3d 997, 1003 (9th Cir. 1998) (citation omitted). The Wilburs' requests for prospective relief, if granted, would have been likely to redress

the injury from the anticipated Compact. We hold that the requirements of Article III standing are satisfied.

## IV.

The State contends that the case is moot because the Wilburs sought an injunction barring the State from consummating the Compact with the Tribe, and the Compact has now been executed. However, the Wilburs sought not only such an injunction, but also declaratory relief voiding several statutes and any cigarette tax contract executed by the State and Tribe. "[T]he controversy regarding [these requests for relief] is as 'live' now as it was when [the Wilburs] first sought relief." *S. Pac. Transp. Co. v. Pub. Util. Comm'n*, 9 F.3d 807, 810 (9th Cir. 1993). Thus, although the Wilburs' request for an injunction might be moot, this does not prevent us from considering other requests for relief which are not moot. *See Powell v. McCormack*, 395 U.S. 486, 496 n.8 (1969) ("Where several forms of relief are requested and one of these requests subsequently becomes moot, the Court has still considered the remaining requests"); *S. Pac. Transp. Co.*, 9 F.3d at 810 (although one claim was moot, court "may address the remaining, live claims").

## V.

The district court held that the TIA deprived it of subject matter jurisdiction over the Wilburs' action. We review the district court's dismissal for lack of subject matter jurisdiction, as well as its interpretation of a federal statute, de novo. *See May Trucking Co. v. Oregon Dep't of Transp.*, 388 F.3d 1261, 1265 (9th Cir. 2004). The TIA provides:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

28 U.S.C. § 1341.

**[5]** In dismissing the action, the district court did *not* conclude that the Wilburs sought to "enjoin, suspend or restrain the assessment, levy or collection" of a tax under Washington law. Rather, the court held that the "anticipated tribal tax arises under state law for purposes of the Tax Injunction Act" because, among other reasons, "[i]n the absence of [the anticipated Compact] Indian retailers selling cigarettes to individuals who are not members of the Tribe could be required to collect state taxes on such transactions." *See United States v. Baker*, 63 F.3d 1478, 1489 (9th Cir. 1995) ("[T]he right of a state to impose and enforce a tax on cigarettes sold by Indians to nontribal members is . . . clearly established").

The district court's focus on the anticipated Tribal tax misses the point. Even accepting the premise that the Wilburs' suit sought to "enjoin, suspend or restrain the assessment, levy or collection" of the Tribal tax (which the Wilburs dispute), the anticipated Tribal tax was not a State tax. If the Tribe imposed a tax independently of any contract with the State and retained the revenues, the TIA would not apply to a suit seeking to "enjoin, suspend or restrain the assessment, levy or collection" of that tax for the obvious reason that the Tribe is not a state. *Cf. Bluebeard's Castle, Inc. v. Gov't of the Virgin Islands*, 321 F.3d 394, 397 & n.5 (3d Cir. 2003) (TIA does not apply to Virgin Islands because it is not a state). We are aware of no authority for the proposition that a tax under Tribal law is transformed into a tax "under state law" simply because the Tribe agrees to enact that law in exchange for a promise by the State not to levy similar taxes. Such an agreement does not alter the fact that the Tribe remains the taxing authority and the sovereign to which tax payments are remitted. Thus, the question is not whether the Wilburs sought to "enjoin, suspend or restrain the assessment, levy or collection" of a *Tribal* tax, but whether they sought to "enjoin, suspend or restrain the assessment, levy or collection" of a *Washington* tax.

**[6]** We are assisted by the Supreme Court's decision in *Hibbs v. Winn*, 124 S. Ct. 2276 (2004). In *Hibbs*, the plaintiffs challenged a state law authorizing certain tax credits, and sought to enjoin the law's operation, on Establishment Clause grounds. *See id.* at 2281. The Court rejected the position that the TIA "prevent[s] federal-court interference with all aspects of tax administration," *id.* at 2288 (quotation marks omitted), and held that the TIA did not bar the plaintiffs' action "because that action, if successful, 'would result in the state's receiving more funds that could be used for the public benefit.' " *May Trucking*, 388 F.3d at 1267, *quoting Hibbs*, 124 S. Ct. at 2283. Thus, "[a]fter *Hibbs*, the dispositive question in determining whether the Act's jurisdictional bar applies is whether '[f]ederal-court relief . . . would have operated to reduce the flow of state tax revenue.' " *Id.*, *quoting Hibbs*, 124 S. Ct. at 2288. Although *Hibbs* had not been decided at the time of the district court's decision, our decision which *Hibbs* affirmed, *Winn v. Killian*, 307 F.3d 1011 (9th Cir. 2002), had been.

**[7]** Here, the Wilburs sought a declaration of the invalidity of the statutes governing cigarette tax contracts, an injunction preventing the State from entering into any contract, and a declaration that any agreement actually executed was void. This relief would not have operated to reduce the flow of Washington's tax revenues; instead, it would have *prevented* the State from agreeing *not* to impose a tax. Thus, the district court erroneously dismissed the case on TIA grounds.

The State argues that the TIA applies because the cigarette tax contract scheme "benefits the State by saving the State resources in enforcing collection of the state taxes," and points to a legislative finding that cigarette tax contracts will "enhance enforcement of the state's cigarette tax law, *ultimately saving the state money* and reducing conflict." Wash. Rev. Code § 43.06.450 (emphasis added). Because the Wilburs' action, if successful, might harm the public fisc by depriving the State of the benefits of cigarette tax contracts,

the State submits that it should be barred by the TIA. But the TIA proscribes only those actions which would operate to decrease a state's *tax* revenue, *see May Trucking*, 388 F.3d at 1267, not any lawsuit which might place financial burdens upon the State. Whatever impact the Wilburs' action might have on the State's litigation and enforcement costs, it surely will not reduce the State's tax revenues. Further, the State's prediction about how this action might affect the State's financial bottom line in the future is too speculative to circumvent the holding of *Hibbs*.

Nor do principles of comity bar this lawsuit. The Supreme Court has relied on such principles "to preclude original federal-court jurisdiction only when plaintiffs have sought district-court aid in order to arrest or countermand state tax collection." *Hibbs*, 124 S. Ct. at 2289 n.9. The Wilburs seek no such relief.

## VI.

The State also argues that the Eleventh Amendment precludes the Wilburs' action, another jurisdictional hurdle we must discuss, even though the district court did not address this argument.

"The Eleventh Amendment bars suits against a state or its agencies, regardless of the relief sought, unless the state unequivocally consents to a waiver of its immunity." *Yakama Indian Nation v. State of Wash. Dep't of Revenue*, 176 F.3d 1241, 1245 (9th Cir. 1999). The Wilburs concede that the State has not waived its immunity and that all claims against the state and its agency, the Department of Revenue, must therefore be dismissed.

However, the Wilburs properly contend that the Eleventh Amendment does not bar their claims for declaratory and injunctive relief against the Governor and the Director and Assistant Director of the Department of Revenue. "Since the

Supreme Court's decision in *Ex parte Young*, 209 U.S. 123
. . . (1908), courts have recognized an exception to the Eleventh Amendment bar for suits for prospective declaratory and injunctive relief against state officers, sued in their official capacities, to enjoin an alleged ongoing violation of federal law." *Agua Caliente Band of Cahuilla Indians v. Hardin*, 223 F.3d 1041, 1045 (9th Cir. 2000); *see also Los Angeles County Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992) ("[T]he Eleventh Amendment does not bar actions seeking only prospective declaratory or injunctive relief against state officers in their official capacities").

**[8]** "[I]n determining whether 'the doctrine of *Ex Parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.' " *ACS of Fairbanks, Inc. v. GCI Communication Corp.*, 321 F.3d 1215, 1216-17 (9th Cir. 2003) (Order), *quoting Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002). The complaint alleged that the challenged statutes authorize the state to enter into agreements which violate federal law and, accordingly, sought a declaration that the statutes were invalid, an injunction preventing the state from utilizing the authority granted by those statutes to enter into any agreement, and a declaration that any agreement entered was invalid. The complaint therefore "alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Id.*; *see also Artichoke Joe's*, 216 F. Supp. 2d at 1109-11 (*Ex Parte Young* permitted claim against Governor seeking declaration that gaming compacts between state and Indian tribes violated federal law). Thus, the State of Washington and its Department of Revenue must be dismissed but not the individual government officers.

## VII.

With these jurisdictional issues behind us, we can now address the Rule 19 question. In the district court, the State

argued that the action should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(7) because the Tribe is an indispensable party pursuant to Rule 19. The district court held that the Tribe was not a necessary party. We generally review for an abuse of discretion the district court's decision regarding joinder, but review de novo any legal conclusions underlying that decision. *See Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 879 (9th Cir. 2004).

Application of Rule 19 involves "three successive inquiries." *EEOC v. Peabody W. Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005).

> First, the court must determine whether a nonparty should be joined under Rule 19(a). We and other courts use the term "necessary" to describe those "[p]ersons to [b]e [j]oined if [f]easible." . . . .

> If an absentee is a necessary party under Rule 19(a), the second stage is for the court to determine whether it is feasible to order that the absentee be joined. . . .

> Finally, if joinder is not feasible, the court must determine at the third stage whether the case can proceed without the absentee, or whether the absentee is an "indispensable party" such that the action must be dismissed. . . . Rule 19 uses "the word 'indispensable' only in a conclusory sense, that is, a person is 'regarded as indispensable' when he cannot be made a party and, upon consideration of the factors [in Rule 19(b)], it is determined that in his absence it would be preferable to dismiss the action, rather than to retain it."

*Id.* at 779-80 (citations omitted). We address each of these inquiries in turn.

A.

**[9]** The State argues that the Tribe is a "necessary" party because the Tribe "claims an interest relating to the subject of the action and is so situated that the disposition of the action in the [Tribe's] absence may . . . as a practical matter impair or impede the [Tribe's] ability to protect that interest." Fed. R. Civ. P. 19(a)(2)(i). In deciding whether Rule 19(a)(2)(i) is satisfied, we "must determine whether the absent party has a *legally protected interest* in the suit," and, if so, whether "that interest will be *impaired or impeded* by the suit." *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990).

The district court, laboring under the mistaken impression that the Compact was still awaiting approval from the Governor, concluded that "[b]ecause the subject of this action does not affect the Tribe's interest in an existing, enforceable agreement, . . . the interest claimed on behalf of the tribe is [not] 'legally protected.' " We need not determine whether the court correctly held that the Tribe had no "legally protected" interest in this action prior to execution of the Compact, but instead determine whether the Tribe has such an interest now that we are aware that the Compact was in effect at the time of the district court decision. Because Federal Rule of Evidence 201 permits us to "take judicial notice of the records of state [entities] and other undisputed matters of public record," we may take notice of the executed Compact even though it was not in the district court record. *Disabled Rights Action Comm.*, 375 F.3d at 866 n.1 (taking notice of licensing agreements to which state agency was a party that had not been entered into district court record).

**[10]** Here, the Wilburs must establish the illegality of the Compact in order to succeed on the merits of any of their claims. Because the Tribe has an interest in retaining the rights granted by the Compact, the requirement of a "legally protected" interest is satisfied. *See Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d

1150, 1156-57 (9th Cir. 2002) (holding that tribe was necessary party under Rule 19(a)(2) where tribe "claim[ed] a legally protected interest in its contract rights with [the defendant]").

**[11]** In addition, disposition of this action in the Tribe's absence may impair or impede the Tribe's ability to protect its interest. If the Compact is invalidated, the State would be released from its contractual obligation to refrain from taxing cigarette sales by Indian retailers to non-Indians and non-Tribe members. If the State resumed imposing such taxes, the Tribe would be forced to choose between double-taxing its own retailers or foregoing tax revenue for essential government services. Thus, "the instant litigation threatens to impair the [Tribe's] contractual interests, and . . . its fundamental economic relationship with [the State]." *Id.* at 1157. As we stated in *Dawavendewa*, it is a "fundamental principle" that "a party to a contract is necessary, and if not susceptible to joinder, indispensable to litigation seeking to decimate that contract." *Id.*; *see also Manybeads v. United States*, 209 F.3d 1164, 1166 (9th Cir. 2000) (where plaintiff sought to "undo[ ]" agreements to which tribe was a party, tribe "qualifie[d] as a necessary party under both parts of Rule 19(a)"); *Kescoli v. Babbitt*, 101 F.3d 1304, 1310 (9th Cir. 1996) (where plaintiff's action would affect agreements to which tribes were parties, tribes were necessary pursuant to Rule 19(a)(2)(i)); *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1044 (9th Cir. 1983) ("[A]ll parties who may be affected by a suit to set aside a contract must be present"); *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir. 1975) ("No procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable"); 4 James Wm. Moore et al., *Moore's Federal Practice* § 19.06[4] (3d ed. 2005) ("As a general rule, all parties to a contract will be necessary in an action to set aside the contract").

The Wilburs argue that the Tribe is not necessary because the State can adequately represent its interest. *See Washington v. Daley*, 173 F.3d 1158, 1167 (9th Cir. 1999) ("As a practical matter, an absent party's ability to protect its interest will not be impaired by its absence from the suit where its interest will be adequately represented by existing parties to the suit"). We have held, however, that absent tribes' interests were not adequately represented by a state in a case similar to this one. In *American Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1018 (9th Cir. 2002), plaintiffs "challenge[d] the legality of the [Arizona] Governor's actions in negotiating new gaming compacts with Indian tribes, or in extending the tribes' existing compacts." We held that the Governor could not adequately represent the absent tribes because, among other reasons, "the State and the tribes have often been adversaries in disputes over gaming, and the State owes no trust duty to the tribes." *Id.* at 1023 n.5. Here, too, the Wilburs challenge the state's actions in entering into agreements with the Tribe; the Tribe and the state have been adversaries in disputes over the subject of those agreements in the past (indeed, resolution of a "long-standing disagreement" regarding cigarette taxation was one of purposes recited in the Compact's preamble); and the state owes the Tribe no trust duty that might ensure vindication of the Tribe's interest. *Hull* thus requires us to reject the Wilburs' contention.

**[12]** The Wilburs argue, however, that the state is an adequate representative because the state and the Tribe "have the exact same interest in seeing to it that their contract is not invalidated." This argument assumes too much. Virtually any party to a contract would prefer to see that contract preserved. Under the Wilburs' logic, one seeking to nullify an agreement could simply sue one of the signatories and then argue that the remaining signatories were not necessary because the existing defendant would "adequately represent" their interest in defending the contract. However, the general rule is exactly the opposite: all parties to a contract are necessary in litigation seeking to "decimate" that contract. *See Dawavendewa*, 276

F.3d at 1157. There is no reason to depart from that general rule in this case. We conclude that the State cannot adequately represent the interests of the Tribe, and thus the Tribe is a necessary party pursuant to Rule 19(a)(2)(i).

## B.

**[13]** We now address whether joinder is feasible. "Federally recognized Indian tribes enjoy sovereign immunity from suit, and may not be sued absent an express and unequivocal waiver of immunity by the tribe or abrogation of tribal immunity by Congress." *Id.* at 1159 (citations omitted). The Wilburs offer no persuasive argument that the Tribe's immunity has either been waived or abrogated. Accordingly, joinder is not feasible. *See id.*

## C.

**[14]** We now address "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." Fed. R. Civ. P. 19(b). In making this determination, we consider four issues:

> first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

*Id.*

**[15]** The first three tests point toward dismissal. "[T]he first factor of prejudice, insofar as it focuses on the absent party,

largely duplicates the consideration that made a party necessary under Rule 19(a): a protectible interest that will be impaired or impeded by the party's absence." *Hull*, 305 F.3d at 1024-25; *see also Dawavendewa*, 276 F.3d at 1162 ("The prejudice to the Nation stems from the same impairment of legal interests that makes the Nation a necessary party under Rule 19(a)(2)(i)"). If the Compact is invalidated in the Tribe's absence, the Tribe will be prejudiced to a great extent.

As to the second test, it is not possible to lessen or avoid any prejudice by the shaping of relief or protective provisions in the judgment. The Wilburs want nothing less than nullification of the Compact. If they succeed, the Tribe will be deprived of the contractual benefits for which it bargained. Moreover, although the Wilburs stress that the Tribe could have intervened if it wished, "we cannot require the [Tribe] to intervene to minimize the potential prejudice, since intervention would require a waiver of sovereign immunity." *Pit River Home & Agric. Coop. Ass'n v. United States*, 30 F.3d 1088, 1102 (9th Cir. 1994).

The third test, whether a judgment rendered in the Tribe's absence will be adequate, also "does not favor the plaintiffs," because if the Compact is invalidated, the Tribe's "protectible interests [would be] impaired." *Hull*, 305 F.3d at 1025; *see also Dawavendewa*, 276 F.3d at 1162 (no partial relief adequate when "[a]ny type of injunctive relief necessarily results in . . . prejudice to [absent tribe]"); *Pit River Home*, 30 F.3d at 1102 (adequate judgment not possible when plaintiff's claims could not be addressed without prejudicing absent party).

**[16]** The fourth test supports proceeding in the Tribe's absence, as it is unclear whether the Wilburs will have an adequate remedy if the action is dismissed. Nonetheless, even assuming the Wilburs have no other forum in which to pursue a remedy, we have "regularly held that the tribal interest in immunity overcomes the lack of an alternative remedy or

forum for the plaintiffs." *Hull*, 305 F.3d at 1025, *citing Dawavendewa*, 276 F.3d at 1162; *see also Clinton v. Babbitt*, 180 F.3d 1081, 1090 (9th Cir. 1999); *Kescoli*, 101 F.3d at 1311; *Pit River Home*, 30 F.3d at 1102; *Quileute Indian Tribe v. Babbitt*, 18 F.3d 1456, 1460 (9th Cir. 1994); *Confederated Tribes of Chehalis Indian Reservation v. Lujan*, 928 F.2d 1496, 1500 (9th Cir. 1991); *Verity*, 910 F.2d at 560; *Lomayaktewa*, 520 F.2d at 1326-27. Thus, a balance of the four tests in Rule 19(b) supports dismissal of the action.

Undeterred, the Wilburs contend that this case falls within the "public rights" exception to joinder rules. "Under this exception, even if the [Tribe is a] necessary part[y], [it is] not deemed indispensable and, consequently, dismissal is not warranted." *Kescoli*, 101 F.3d at 1311. In *Kescoli*, we explained that, although "[t]he contours of the public rights exception have not been clearly defined," there are two requirements that must be satisfied before the exception may properly be invoked. *Id.* First, "the litigation must transcend the private interests of the litigants and seek to vindicate a public right." *Id.* Second, "although the litigation may adversely affect the absent parties' interests, the litigation must not 'destroy the legal entitlements of the absent parties.' " *Id.*, *quoting Conner v. Burford*, 848 F.2d 1441, 1459 (9th Cir. 1988); *see also Shermoen v. United States*, 982 F.2d 1312, 1319 (9th Cir. 1992) ("[T]he public rights exception to joinder rules is an acceptable intrusion upon the rights of absent parties only insofar as the adjudication does not destroy the legal entitlements of the absent parties" (quotation marks, alterations and citation omitted)). We need not decide whether the first requirement is satisfied, because the second is not.

The Tribe would lose valuable contractual benefits if the Compact was held invalid. This threat to the Tribe's contractual interests precludes application of the public rights exception. *See Kettle Range Conservation Group v. United States Bureau of Land Mgmt.*, 150 F.3d 1083, 1087 (9th Cir. 1998)

(where plaintiffs sought rescission of contract pursuant to which land had been transferred to absent private parties, court had "no doubt that an order declaring the executed portion of the land exchange void *ab initio* would 'destroy the legal entitlements of the absent parties' " (citation omitted)); *Kescoli*, 101 F.3d at 1311-12 (public rights exception inapplicable because, among other reasons, rights of absent tribes' members under lease agreements "could be significantly affected" if action proceeded in tribes' absence).

D.

Finally, the Wilburs contend that the First Amendment right to "petition the government for a redress of Grievances," U.S. Const. amend. I, cl. 6, prohibits, or at least weighs against, dismissal of this action for nonjoinder pursuant to Rule 19. In support of this novel argument, the Wilburs cite two sets of cases. First, they rely upon two state court cases suggesting that the lack of an alternative forum prevents dismissal of an action for nonjoinder even where an absent tribe has not waived its sovereign immunity. *See Panzer v. Doyle*, 680 N.W.2d 666, 682-83 (Wis. 2004); *Saratoga County Chamber of Commerce, Inc. v. Pataki*, 798 N.E.2d 1047, 1057-59 (N.Y. 2003). These decisions, however, do not apply Federal Rule of Civil Procedure 19 and do not even discuss the Petition Clause. Rather, they apply state law governing joinder of indispensable parties. Unlike state courts applying state law, we are bound by our own decisions interpreting federal Rule 19.

Second, the Wilburs rely on cases stating the general proposition that "the right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances." *Bill Johnson's Rests., Inc. v. NLRB*, 461 U.S. 731, 741 (1983). This does not aid the Wilburs, however, for the right of access to the courts is not absolute. *See Hudson v. Palmer*, 468 U.S. 517, 523 (1984) ("[T]he constitutional right to petition the Government for redress of their

grievances . . . includes a *reasonable* right of access to the courts" (emphasis added)). Moreover, the right must be exercised "within the limits . . . of [the courts'] prescribed procedures." *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 515 (1972).

It is important to put this argument in context. Rule 19(b) itself requires consideration of "whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder" as one of four tests relevant to the determination whether an action should be dismissed. Fed. R. Civ. P. 19(b). What the Wilburs are arguing, then, is that the Petition Clause requires us to give the lack of an alternative forum more weight in the Rule 19(b) calculus than we have in our prior cases. Although our prior decisions did not specifically discuss the relevance of the Petition Clause to the Rule 19 analysis, we do not believe our colleagues ignored the obvious constitutional implications of depriving a party of a forum in which to pursue its claims. Our prior cases turn not on a disrespect for a plaintiff's right of access to the courts, but "on the fact that society has consciously opted to shield Indian tribes from suit without congressional or tribal consent." *Quileute Indian Tribe*, 18 F.3d at 1461 (quotation marks and citation omitted). The Wilburs' invocation of the Petition Clause does not compel a different result.

Lastly, the Wilburs argue that, if we hold that dismissal pursuant to Rule 19 is proper, we should allow them to amend their complaint to name a Tribal official as a defendant. That issue is not before us because the Wilburs never sought to amend their complaint in the district court and they raise this issue for the first time in their reply brief. *See Ventura Packers, Inc. v. F/V Jeanine Kathleen*, 305 F.3d 913, 916 n.1 (9th Cir. 2002) (declining request for leave to amend complaint because it was not made in district court); *Black v. Payne*, 591 F.2d 83, 89 (9th Cir. 1979) (denying leave to amend because, among other reasons, request was made for first time in reply brief on appeal). We express no opinion on whether the Tribal

official could have been sued and, if so, whether this would have enabled the suit to proceed in the Tribe's absence.

**DISMISSAL AFFIRMED.**