Merrimack
No. 2003-519

RYMES HEATING OILS, INC.

v.

COMMISSIONER, NEW HAMPSHIRE DEPARTMENT OF SAFETY

Argued: July 15, 2004
Opinion Issued: November 18, 2004

*Sheehan, Phinney, Bass & Green, P. A.*, of Manchester (*Edward A. Haffer* on the brief and orally), for the plaintiff.

*Kelly A. Ayotte*, attorney general (*Andrew B. Livernois*, assistant attorney general, on the brief, and *Wynn Arnold*, senior assistant attorney general, orally), for the defendant.

BRODERICK, C.J. The plaintiff, Rymes Heating Oils, Inc. (Rymes), appeals an order of the Superior Court (*Smukler*, J.) affirming a decision of the defendant, the Commissioner of the New Hampshire Department of Safety (DOS), which assessed against Rymes road toll fees, interest and penalties in excess of $187,000. We affirm.

The record supports the following facts. Rymes is a distributor that sells motor fuels and heating oil. During the relevant time period, Rymes purchased clear kerosene to blend with both diesel motor fuel and heating oil to prevent gelling during the winter months. It did not, however, pay any road toll fees on the clear kerosene it purportedly blended with heating oil. *See* RSA 260:32 (2004); RSA 260:38, VI (2004). Following an audit, DOS assessed road toll fees, in addition to interest and penalties, on the kerosene on which Rymes failed to pay road toll fees. Rymes objected and, after a hearing, a DOS hearings examiner upheld the assessment. The superior court subsequently upheld the hearings examiner's decision. This appeal followed.

To provide a proper framework for this appeal, we first examine relevant portions of the motor vehicle road toll law. By statute, "motor

fuel" is subject to an eighteen cents per gallon road toll fee that distributors are obligated to collect from purchasers and remit to the State. *See* RSA 260:32. "Motor fuel" is defined to include "all products used in an internal combustion engine for the generation of power to propel motor vehicles or mechanical contrivances on or over the ways of this state." RSA 259:58 (2004). The road toll, however, "is not a tax upon the sale or consumption of motor vehicle fuels as such but is a road toll imposed as a recompense for the use of the highways." *Opinion of the Justices*, 108 N.H. 170, 171 (1967). In other words, the road toll fee constitutes "a charge for subjecting roads to a given amount of destructive use or wear and tear." *Savin Co. v. Clarke*, 97 N.H. 86, 88 (1951) (ellipses and quotations omitted).

To effectuate the collection of the road toll fee, distributors are required to render a monthly return to DOS showing "the total number of gallons sold and used in the state during the previous calendar month together with such other information as the commissioner may require for the reasonable administration of this subdivision." RSA 260:38, I (2004). The return must be accompanied with a check for the road toll fee due. *Id.* In the event consumers ultimately use purchased fuel "in any other way than generating power in an internal combustion engine while traveling on the ways," they are entitled to a refund from the State of the road toll fees they paid to the distributor. RSA 260:47, I(a) (2004).

"Special fuel" constitutes a subcategory of "motor fuel," and invokes distinct requirements under the motor vehicle road toll law. *See, e.g.,* RSA 260:38, VI; RSA 260:52 (2004). "Special fuel" is defined as "all products, except gasoline, propane, natural gas, or liquified natural gas, used in an internal combustion engine for the generation of power to propel motor vehicles or mechanical contrivances on or over the ways." RSA 259:103-a (2004). This definition is identical to that of "motor fuel," with the exception that "special fuel" excludes certain specific types of fuel products, like gasoline.

A product which constitutes "special fuel" is subject to a dyeing and marking process in which "[s]pecial fuel sold by a distributor on which the New Hampshire road toll fees have not been paid shall have dye and markers added to it at or before the time of withdrawal at a terminal or refinery rack." RSA 260:38, VI. A terminal or refinery rack, as explained by the DOS hearings examiner, is a fuel station where distributors purchase, at wholesale, fuel product which is pumped into commercial tanker trucks. The driver swipes a credit card for identification and payment, and a computer identifies the individual type of truck and other information before dispensing the fuel requested. Therefore, selection of

either clear or dyed and marked special fuel occurs at this time, in accordance with RSA 260:38, VI. Road toll fees are not paid on special fuel that is dyed and marked, but are paid on special fuel which remains clear. *See* RSA 260:38, VI.

In this case, Rymes withdrew clear kerosene at a terminal or refinery rack but did not pay any road toll fees on it. Rymes argues on appeal that the kerosene it mixed with heating oil is subject neither to the motor vehicle road toll law generally, nor, in particular, to the dyeing and marking process required for "special fuel" on which road toll fees have not been paid. It explains that kerosene mixed with heating oil is not "used in an internal combustion engine for the generation of power to propel motor vehicles or mechanical contrivances on or over the ways" (hereinafter referred to as use for a "road toll purpose") as required under RSA 259:58 to constitute "motor fuel" and under RSA 259:103-a to constitute "special fuel." *See* RSA 260:32 (levy of road toll on motor fuel); RSA 260:38, VI (dyeing and marking process imposed upon special fuel). DOS contends that because kerosene is capable of being used for a road toll purpose, it constitutes "special fuel" which must be dyed and marked to avoid payment of road toll fees. According to DOS, Rymes could have selected dyed and marked kerosene to mix with heating oil and properly paid no road toll fees on it. Its selection of clear kerosene, DOS asserts, obligated Rymes to collect the fees from its consumers and remit them to the State. The consumers, in turn, could have sought a refund if their *actual* end use of the product was something other than "generating power in an internal combustion engine while traveling on the ways," RSA 260:47, I(a).

We review the trial court's decision *de novo* because resolution of this case rests solely upon our interpretation of a statute, a question of law. *Appeal of Tennis*, 149 N.H. 91, 93 (2003). "In matters of statutory interpretation, this court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole." *Acadia Ins. Co. v. McNeil*, 142 N.H. 815, 818 (1998) (quotation omitted). We begin by reviewing the plain and ordinary meaning of the words used and consider them not in isolation but in context of the overall statute. *Pennelli v. Town of Pelham*, 148 N.H. 365, 366 (2002). "In so doing, we are better able to discern the legislature's intent, and therefore better able to understand the statutory language in light of the policy sought to be advanced by the entire statutory scheme." *Id.* (quotation omitted). However, "[w]here statutory language is ambiguous, ... we examine the statute's overall objective, and give substantial deference to the interpretation of those

charged with its administration." *Appeal of Ashland Elec. Dept.*, 141 N.H. 336, 340 (1996).

The parties do not agree whether kerosene, which is capable of use for either a road toll or non-road toll purpose, constitutes "special fuel" when it is both intended to be used for a non-road toll purpose at the time it is withdrawn from the terminal, and then actually used for a non-road toll purpose. In particular, the parties dispute whether the term "used," appearing amidst identical phrasing in both the definition provision of "motor fuel," RSA 259:58, and that of "special fuel," RSA 259:103-a, refers to a product's potential or actual use for a road toll purpose. After reviewing the purpose of and the practical mechanics of the motor vehicle road toll law, and also affording substantial deference to the interpretation of the road toll statute by DOS, we conclude that a fuel product's character as "special fuel," which is subject to the dyeing or marking process when no road toll fees are paid on it, depends upon the product's potential for use for a road toll purpose, rather than upon its actual end use.

The purpose of the motor vehicle road toll law is to "secure the motor fuel road toll or any other special charges with respect to the sale or consumption of motor fuels as specified in Part II, Article 6-a of the constitution of New Hampshire." RSA 260:31 (2004). Implicit in this purpose is the curtailment of efforts to evade road toll fees. The dyeing and marking requirement for "special fuel" furthers the purpose of the law by distinguishing fuel upon which no road toll fees have been paid from that special fuel upon which road toll fees have been paid. In this way, DOS can efficiently enforce payment of road toll fees by readily tracking special fuel to determine whether it is actually being used for a road toll purpose and whether road toll fees have been properly paid. Excluding from "special fuel" a product, like kerosene, which has the potential for use for a road toll purpose, and thus enabling a distributor to purchase clear fuel, rather than dyed and marked, and pay no toll fees on it would thwart DOS' ability to efficiently administer the motor vehicle road toll law.

Moreover, the practical mechanics of the dyeing and marking provision indicate that a product's character as "special fuel" depends upon its potential for use for a road toll purpose. According to RSA 260:38, VI, the dyeing and marking occurs "at or before the time" a distributor withdraws fuel from a terminal or refinery rack. This event necessarily occurs in advance of consumers purchasing the product and putting it to actual use. Consequently, distributors must anticipate the end use of a product, like kerosene, that is capable of use for both a road toll and non-road toll purpose, and select either clear or dyed and marked fuel. Selection of dyed

and marked fuel signals that the product will not be used for a road toll purpose, and the distributor incurs no obligation to collect and remit road toll fees on that product. Selection of clear fuel, however, signals that the product may ultimately be used for a road toll purpose, and obligates the distributor to pay road toll fees. Any consumer who actually uses the clear fuel for a non-road toll purpose is entitled to a refund of the road toll fees paid. Ultimately, after application of the overall scheme of the motor vehicle road toll law, including the refund provision, road toll fees are only paid for motor fuel (which includes special fuel) that is *actually* used for a road toll purpose.

We acknowledge that certain language in the motor vehicle road toll statute is awkward or appears conflicting. For example, the "have not been paid" language in the dyeing and marking provision, in conjunction with the "at or before the time of withdrawal" phrase suggests that road toll fees are paid, if at all, prior to or at the time fuel is withdrawn from a terminal or refinery rack. *See* RSA 260:38, VI. The requirements of RSA 260:38, I, however, suggest that road toll fees are paid after the fuel is sold and used in the State, not at or prior to the time distributors withdraw the fuel from the terminal or refinery rack. *See* RSA 260:38, I (fees paid on monthly basis after fuel is "sold and used" in the State). Therefore, we afford substantial deference to the interpretation of the statute by DOS, which is charged with the administration of the motor vehicle road toll law, *see* RSA 259:19 (2004) ("department" in title refers to department of safety); RSA 260:5 (2004) (rulemaking authority granted to department); *see also, e.g.,* RSA 260:36 (2004) (amended by Laws 2004, 194:3) (license to engage in business as distributor of motor fuels procured from department); RSA 260:38, I (return and toll fees payment sent to department); RSA 260:44, I (2004) (department given authority to examine records of distributors).

The DOS hearings examiner concluded, in pertinent part:

> The law in New Hampshire . . . is designed to have the distributor make the decision "at the rack." If the "clear" fuel picked up at the "rack" is sold for non-highway use, the NH code of Administrative Rules, Saf-C 300, establishes an avenue to the distributor or the "end-user" to request a refund. Selling fuel for non-highway use, such as for home heating, allows the distributor to not pay the road toll if the product is dyed.
>
> . . . Looking at the definition [of "special fuel"], kerosene is not excluded and is considered a petroleum product or fuel. As the State auditors discussed, if this special fuel was not dyed and

marked, the fuel could be sold to an end-user and the responsibility would be placed with the State to uncover any non-highway use for the "clear" fuel sold by a distributor. Common sense would dictate that either the end users provide sufficient proof of the fuel[']s non-highway use or the distributor provides documentation for refund by the Road Toll administration. . . . It does not seem reasonable to take one definition out of context, but look at the totality of the statutes and rules. If the fuel is dyed, it is not used in a highway vehicle as no toll was paid "up front." If the non-dyed product is not used as was intended for highway use as the fee was paid at the "rack", then the rules provide clear explanation to either the distributor or the end user to seek a refund.

Our reading of the statutes in question accords with DOS' interpretation, and comports with the purpose and practical mechanics of the motor vehicle road toll law.

█ In sum, we conclude that because clear kerosene has the capacity to be used for a road toll purpose, it constitutes "special fuel" which must be dyed and marked when no road toll fees are paid on it. Rymes had the opportunity to choose between clear or dyed and marked kerosene. It could have selected dyed and marked product to mix with home heating oil and incurred no obligation to collect and remit road toll fees. By selecting clear kerosene, however, Rymes signaled that the fuel ultimately may be used for a road toll purpose. Accordingly, it was obligated to collect fees from its purchasers and remit them to the State. Therefore, the trial court correctly affirmed the DOS hearings examiner's decision to impose road toll fees, with interest and penalties.

*Affirmed.*

NADEAU, DALIANIS, DUGGAN and GALWAY, JJ., concurred.