NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Rockingham
No. 2014-117

MARCO PETROLEUM INDUSTRIES, INC.

v.

COMMISSIONER, NEW HAMPSHIRE DEPARTMENT OF SAFETY

Argued: November 13, 2014
Opinion Issued: May 12, 2015

Douglas, Leonard & Garvey, P.C., of Concord (Charles G. Douglas, III on the brief, and Jason R.L. Major orally), for the petitioner.

Joseph A. Foster, attorney general (John J. Conforti, assistant attorney general, on the brief and orally), for the respondent.

BASSETT, J. The petitioner, Marco Petroleum Industries, Inc. (Marco), appeals an order of the Superior Court (McHugh, J.) affirming a decision of the respondent, the Commissioner of the New Hampshire Department of Safety (DOS). Following an administrative hearing, DOS determined that Marco owed the State $155,070.71, including interest and penalties, due to Marco's failure to pay the New Hampshire road toll on fuel imported into the state. On appeal, Marco argues that DOS and the trial court erred by finding that Marco was required to pay the road toll because: (1) it was not a "distributor" of motor fuels under RSA 259:21 (2014); (2) it did not "sell" motor fuel under RSA

260:32 (2014) (amended 2014); and (3) it would be unfair to require Marco to pay the New Hampshire road toll because it had already paid the Massachusetts fuel tax.  We affirm.

Before addressing the substance of Marco's claims, we provide, for context, an overview of the relevant fees assessed by government entities on the sale of motor fuels.  The New Hampshire Motor Vehicle Road Toll Law, see RSA 260:30 (2014), imposes a road toll "upon the sale of each gallon of motor fuel sold by distributors thereof."  RSA 260:32.  A "distributor" is defined as:

> any person, wherever resident or located, who imports or causes to be imported motor fuel into the state, and also any person who refines, distills, prepares, blends, manufactures, or compounds motor fuel within this state . . . .  Bringing motor fuel into the state in the fuel supply tank attached to the engine of a vehicle or aircraft shall not be considered importing.

RSA 259:21.  The road toll is "imposed as a recompense for the use of the highways."  Rymes Heating Oils v. Comm'r, N.H. Dep't of Safety, 151 N.H. 472, 473 (2004) (quotation omitted).  "In other words, the road toll fee constitutes a charge for subjecting roads to a given amount of destructive use or wear and tear."  Id. (quotation omitted).  New Hampshire law makes it unlawful "for any person to sell or use motor fuel upon which the road toll . . . has not been paid, unless the person is a holder of a valid license to engage in business as a distributor of motor fuels."  RSA 260:36 (2014).

Similarly, Massachusetts imposes a per gallon "fuel tax" that is paid by the purchaser at the time the fuel is sold.  See Mass. Gen. Laws ch. 64A (2011 & Supp. 2014).  As with the New Hampshire road toll, the Massachusetts fuel tax is a fee paid by "motor carriers operating their motor vehicles in Massachusetts . . . to support the State's highway system."  American Trucking v. Secretary of Admin., 613 N.E.2d 95, 98 (Mass. 1993).

All of the states in the contiguous United States, including New Hampshire and Massachusetts, are parties to the International Fuel Tax Agreement (IFTA).  See Illinois Cent. R.R. v. Tennessee Dept. of Revenue, 969 F. Supp. 2d 892, 894 (M.D.Tenn. 2013).  The IFTA is a "multi-jurisdictional agreement that is intended to encourage cooperation in the administration and collection of motor fuel use tax."  May Trucking Co. v. Oregon Dept. of Transp., 388 F.3d 1261, 1262 (9th Cir. 2004) (quotations omitted).  The IFTA does not impose a tax; "[r]ather, its member jurisdictions impose the motor fuel taxes, and [the] IFTA permits the uniform administration and collection of those taxes as they pertain to multi-state carriers."  Id. at 1262-63.  "Under [the] IFTA, an interstate motor carrier pays all its state fuel taxes quarterly to the 'base jurisdiction' in which it registers as a licensee under [the] IFTA."  Id. at 1263.  "The base jurisdiction then forwards the appropriate tax amounts to each

individual state in which the motor carrier operates." Id. "That arrangement prevents a motor carrier from having to make multiple tax payments to the different states in which it operates." Id.

The material facts are undisputed. On multiple occasions between June 2008 and March 2011, Marco contracted with Irving Oil Terminals, Inc. (Irving) for the purchase of diesel fuel. These purchases totaled 603,138 gallons. Each purchase included the transfer of fuel by Irving, at its facility located in Revere, Massachusetts, into trucks operated by P.S. Marston, LLC (Marston). Marston and Marco share a business address in North Hampton, New Hampshire. Marston transported the fuel from Revere to Marco's facility in North Hampton, New Hampshire. Marston invoiced Marco for the deliveries, and Marco paid those bills. The bill of lading issued by Irving for each sale was identical except for the date of sale, amount of fuel purchased, and the invoice amount. Also in connection with each purchase, Marco paid the Massachusetts fuel tax to Irving, and Irving then forwarded the funds to Massachusetts.

In 2012, DOS audited Marco's "Motor Fuel Distributor" account. DOS concluded that Marco "imported motor fuel into [New Hampshire] without a Motor Fuel Distributor license and therefore failed to report and pay the required [New Hampshire] road toll" on the 603,138 gallons of fuel purchased from Irving. DOS calculated that Marco owed the State $155,070.71. Marco challenged the audit by DOS and requested an administrative hearing.

DOS held a hearing in September 2012. Marco argued that it was not liable for the New Hampshire road toll because it was not a "distributor" of motor fuels but, rather, the end purchaser. The DOS road toll audit manager asserted that Marco acted as a "distributor" without a current Motor Fuel Distributor license or IFTA license and unlawfully imported motor fuel into New Hampshire. DOS rejected Marco's argument, finding that Marco acted as a distributor of motor fuel and that the assessment was proper. Marco appealed to the superior court.

The parties filed cross-motions for summary judgment. Marco argued that, because Irving hired Marston to deliver the fuel to Marco in New Hampshire, Irving, rather than Marco, acted as the distributor for purposes of the New Hampshire road toll. In response, DOS argued that Irving merely transferred the fuel to Marston in Massachusetts, and that Marco was the distributor because, under RSA 259:21, Marco "import[ed] or cause[d] to be imported," the fuel into New Hampshire. The court agreed with the ruling by DOS, concluding that "Marco did purchase fuel on which a road toll had not been paid, and it transported the fuel across the State's highways." This appeal followed.

On appeal, Marco argues that Irving, not Marco, acted as a "distributor" of motor fuels under RSA 259:21 and 260:32, and that DOS should recover the

New Hampshire road toll from Irving.  DOS counters that Marco caused the fuel to be imported into New Hampshire and, as such, acted as a "distributor" and is responsible for paying the New Hampshire road toll.  Marco next argues that, because it used the fuel only in its own vehicles, there was no "sale" of motor fuel by Marco, which is required to trigger payment of the road toll under RSA 260:32.  DOS responds that Marco failed to preserve this argument because Marco raises the issue for the first time on appeal.  Alternatively, DOS maintains that the statutory definition of "sale" includes "any use of motor fuel by a distributor."  RSA 259:95 (2014).  Finally, Marco contends that it is unfair to require it to pay the New Hampshire road toll when there is no dispute that it has already paid the Massachusetts fuel tax on the same gallons of fuel, and that DOS should seek to recover the road toll from Massachusetts.  DOS counters that it is undisputed that the New Hampshire road toll has not been paid, and, if Marco had the proper distributor licenses, the fuel tax paid by Marco — which Irving then paid to Massachusetts — could have been reallocated to New Hampshire in accordance with the IFTA.

In reviewing the trial court's ruling on cross-motions for summary judgment, we consider the evidence in the light most favorable to each party in its capacity as the nonmoving party and, if no genuine issue of material fact exists, we determine whether the moving party is entitled to judgment as a matter of law.  Bovaird v. N.H. Dep't of Admin. Servs., 166 N.H. 755, 758 (2014).  If our review of that evidence discloses no genuine issue of material fact and if the moving party is entitled to judgment as a matter of law, then we will affirm the grant of summary judgment.  Id.  In this case, the superior court found that "[t]he parties do not dispute the material facts; they dispute the legal import of those facts."  We review the trial court's application of the law to the facts de novo.  Id.

This appeal requires interpretation of certain provisions of the Motor Vehicle Road Toll Law.  "In matters of statutory interpretation, this court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole."  Rymes Heating Oils, 151 N.H. at 474 (quotation omitted).  "We begin by reviewing the plain and ordinary meaning of the words used and consider them not in isolation but in context of the overall statute."  Id.  "In doing so, we are better able to discern the legislature's intent, and therefore better able to understand the statutory language in light of the policy sought to be advanced by the entire statutory scheme."  Id. (quotation omitted).

Marco first argues that DOS erred because, contrary to the finding by DOS, it was Irving — rather than Marco — that acted as a "distributor" as defined in RSA 259:21.  In relevant part, the statute states:  "'Distributor,' . . . shall mean any person, wherever resident or located, who imports or causes to be imported motor fuel into the state . . . ."  RSA 259:21.  Accordingly, if Marco

"import[ed] or cause[d] to be imported" fuel into New Hampshire, then Marco acted as a "distributor" and was required to pay the New Hampshire road toll.

Marco contends that its designation as the "consignee" in the bill of lading created a destination contract requiring delivery to Marco in New Hampshire. See RSA 382-A:7-102(a)(3) (Supp. 2014) (defining "consignee" as the "person named in a bill of lading to which or to whose order the bill promises delivery"). Marco asserts that, because the bill of lading was a destination contract, Irving held title to the fuel when it entered New Hampshire, and, therefore, Irving was the distributor. DOS counters that Marco received title to the fuel in Massachusetts. However, DOS also argues that, regardless of when and where title passed from Irving to Marco, it was Marco that "caused the import" of the fuel into New Hampshire. We agree with DOS on this latter point.

The statutory definition of "distributor" does not require a determination of which entity had title at the time when the fuel was transported across the state line into New Hampshire. See RSA 259:21. We agree with DOS that, when title to the fuel passed to Marco has little, if any, relevance to the specific issues before us, which is whether Marco or Irving "import[ed] or cause[d] to be imported" the fuel into New Hampshire. Id. Additionally, we note that Marston — the entity that physically transported the fuel into New Hampshire — is not a party to this action, and neither party argues that Marston acted as the distributor in this instance. Instead, Marco argues that Marston was acting on behalf of Irving, and DOS argues that Marco hired Marston to deliver the fuel.

The sequence of events relating to each sale, together with the undisputed evidence in the record, supports the conclusion that Marco "import[ed] or cause[d] to be imported" the fuel into New Hampshire. It is undisputed that Marco was the end user of the fuel, and that Marston transported the fuel to Marco. After Marston delivered the fuel to Marco, Marston billed Marco for the delivery. Marco does not dispute the fact that Marco, in fact, paid those invoices, rather than Irving. The record does not contain any documentation demonstrating that Irving and Marston had an agreement to deliver the fuel to Marco in New Hampshire.

Marco's argument is, in essence, that its designation as "consignee" on a bill of lading created a destination contract, which, standing alone, means that Irving had title to the fuel when it entered New Hampshire, and, therefore, that Irving "import[ed] or cause[d] to be imported" the fuel into New Hampshire. We are not persuaded. To the contrary, we agree with the determination made by both DOS and the trial court — that Marco imported or caused to be imported motor fuel into New Hampshire, and that, Marco acted as a "distributor" as defined by RSA 259:21.

5

Marco next argues that, regardless of whether it acted as a distributor, it was not required to pay the New Hampshire road toll because it did not "sell" the motor vehicle fuel but was "merely the end user." See RSA 260:32. DOS counters that Marco failed to preserve this issue for appeal. Alternatively, DOS argues that, even if we assume that this argument is preserved, the term "sale" as used in the Motor Vehicle Road Toll Law does not require a transaction involving a third party.

Assuming, without deciding, that this argument is preserved, we agree with DOS. The road toll is imposed "upon the sale of each gallon of motor fuel sold by distributors thereof. The road toll shall be collected by the distributor from the purchaser and remitted to the state . . . ." Id. (emphasis added). The term "sale" is defined in the Motor Vehicle Road Toll Law to mean "any transfer of ownership and any use of motor fuel by a distributor for the propulsion of vehicles on the ways." RSA 259:95 (2014) (emphasis added). This expansive definition is entirely consistent with the stated purpose of the Motor Vehicle Road Toll Law: "to secure the motor fuel road toll . . . with respect to the sale or consumption of motor fuels." RSA 260:31 (2014) (emphasis added). Moreover, because the road toll is "a charge for subjecting roads to a given amount of destructive use or wear and tear," Rymes Heating Oils, 151 N.H. at 473 (quotation omitted), including the "use of motor fuel" in the definition of "sale" is logical. Here, because Marco has acknowledged that it purchased "the fuel for its own internal use," and it has never argued the fuel was used elsewhere than on the roads of New Hampshire, we conclude that Marco's use of the fuel falls squarely within the definition of "sale" in RSA 259:95.

We also reject Marco's argument that it is "grossly inequitable and unfair" to require it to pay the New Hampshire road toll when it has already paid the Massachusetts fuel tax. This arguably unfair situation arose only because Marco did not avail itself of the interstate mechanism in place — the IFTA — to prevent just this type of double payment.

An IFTA licensee "pays all its state fuel taxes quarterly to the 'base jurisdiction' in which it registers as a licensee under the IFTA." May Trucking Co., 388 F.3d at 1263. "The base jurisdiction then forwards the appropriate tax amounts to each individual state in which the motor carrier operates." Id. Additionally, in New Hampshire, it is unlawful "for any person to sell or use motor fuel upon which the road toll . . . has not been paid, unless the person is a holder of a valid license to engage in business as a distributor of motor fuels." RSA 260:36. Although, by its terms, RSA 260:32 does not make it unlawful for Marco to operate without a license — provided that it pays the road toll — it is undisputed that the New Hampshire road toll has not been paid on the fuel Marco imported into New Hampshire.

There is also no dispute that, at the time of the purchases, Marco did "not hold a current Motor Fuel Distributor license or a current international

fuel tax . . . license." In fact, at the administrative hearing, Marco conceded that it had "an IFTA issue." If, at the time of the purchases, Marco had a New Hampshire Motor Fuel Distributor license and an IFTA license, it would have been required to document where the fuel was used. See International Fuel Tax Agreement Procedures Manual P550.100 (rev. ed. 2015) ("The licensee must maintain complete records of all motor fuel purchased, received, and used in the conduct of its business."); see also RSA 260:38 (2014) (amended 2014). Under those circumstances, Marco would have paid the fuel tax to its base jurisdiction, which, in turn, would have allocated a proportional share to each state based on fuel consumption. See May Trucking Co., 388 F.3d at 1263. Given the IFTA framework, we are not persuaded by Marco's contention that "Irving erroneously paid Massachusetts' road toll tax on the fuel . . . rather than paying the State of New Hampshire's road toll tax." It defies common sense to charge Irving with the knowledge of where Marco — an unlicensed out-of-state distributor — consumed the fuel that it purchased from Irving. As a distributor, Marco had the obligation, pursuant to RSA 260:32, to collect and remit the road toll to New Hampshire.[*] Marco, therefore, must bear the ultimate responsibility for non-payment of the New Hampshire road toll.

Finally, we are not persuaded by Marco's argument that DOS — rather than Marco — has the responsibility to recover the Massachusetts fuel tax that Marco paid to Irving. The Massachusetts statute provides otherwise: it states that it is Marco's responsibility to seek from Massachusetts any reimbursement to which it may be entitled. See Mass. Gen. Laws ch. 64A, § 7 (2011) (providing that the individual seeking a reimbursement must file an affidavit and supporting documentation with the commissioner of revenue). Indeed, Marco acknowledged at oral argument that, had it filed a timely claim in Massachusetts, it could have sought a refund of the fuel tax that it paid in Massachusetts. See id. The fact that Marco, due to its own actions or inaction, may now be time-barred from obtaining a refund from Massachusetts does not render the assessment of the New Hampshire road toll against Marco "grossly inequitable and unfair."

Affirmed.

DALIANIS, C.J., and HICKS, CONBOY, and LYNN, JJ., concurred.

---

[*] Although RSA 260:32 states that the road toll shall be collected by the distributor "from the purchaser," because a user of fuel such as Marco qualifies as a distributor under RSA 259:21, we construe RSA 260:32 to mean that the road toll is to be collected from the purchaser only if, in fact, there has been such a sale.